No. 43,335

HENRY STRICKLIN, *Appellant*, v. PARSONS STOCKYARD COMPANY, a corporation, ARLIE BURTIN, P. W. BEAMAN, and FRANK BURT, *Appellees.*

(388 P. 2d 824)

Opinion filed January 25, 1964.

*Payne H. Ratner, Louise Mattox, Payne H. Ratner, Jr., Cliff W. Ratner, Edmund R. Learned, R. R. Barnes* and *Tyler C. Lockett,* all of Wichita, and *Fayette Rowe,* of Columbus, were on the briefs for appellant.

*Jack L. Goodrich,* of Parsons, was on the briefs for appellee Frank Burt. *Kirke C. Veeder,* of Independence, was on the briefs for appellees Burtin and Beaman. *Glenn Jones,* of Parsons, was on the briefs for appellee Parsons Stockyard Company.

The opinion of the court was delivered by

FATZER, J.: The plaintiff brought this action against four defendants to recover damages for personal injuries, charging each with concurrent negligent acts which proximately caused his injuries and damages. The district court sustained each of the defendant's demurrers to plaintiff's second amended petition, and the plaintiff perfected this appeal.

The parties will be referred to as plaintiff and defendants in order of their appearance in the district court, unless otherwise indicated.

As a result of various motions to strike and to make more definite and certain, the plaintiff's second amended petition is lengthy, containing 61 separate paragraphs which comprise 20 printed pages in the abstract. The recital in detail of the facts surrounding plaintiff's injuries, including a great deal of evidence demanded by defendants, is highly summarized.

The plaintiff alleged that the defendant, Parsons Stockyard Com-

pany, and defendants Arlie Burtin and P. W. Beaman, doing business as Burtin-Beaman Commission Company, were engaged in a joint enterprise in the purchase and sale of livestock; that the defendant Frank Burt was in the employment of the commission company; that Burt was given to playing pranks involving physical force upon customers who were doing business in the stockyard area; that defendants Burtin and Beaman knew or had knowledge for over one year that Burt played pranks of a dangerous nature which might result in physical injury and pain to persons lawfully upon the premises, and the nature of such "horseplay" resorted to on at least eight separate occasions, other than the one involving the plaintiff in this action, was pleaded in detail in the amended petition.

Following the foregoing recital, plaintiff alleged that on November 19, 1957, he took a truckload of calves to the stockyard company to be sold through Burtin-Beaman Commission Company; that the calves were unloaded from his truck by employees of the stockyard company and placed in pens for sale by the commission firm; that during the course of the sale of his calves from the pens, plaintiff climbed upon a "2 by 6" wooden board affixed to the top of the cattle pen and seated himself thereon; that it was customary for cattle sellers to use that board as a seat so as to be present when their cattle were sold and thereby permit free movement of the livestock in the pen and down the alleys of the stockyard. That while plaintiff was seated in the foregoing position, the defendant Burt, in an act of "horseplay," grasped plaintiff's feet and lifted them into the air, causing him to lose his balance and fall from the top of the pen to the concrete floor, a distance of six feet; that defendant Burtin was in the pen when Burt grasped the plaintiff's feet and lifted them into the air and although knowing of Burt's propensities for playing practical jokes upon customers involving physical force, he paid no attention to Burt and made no protest to him to leave the plaintiff alone; that as a result of the fall, plaintiff suffered severe injuries which were itemized in detail.

Plaintiff first contends he alleged a cause of action against the defendant Parsons Stockyard Company on the theory of a joint enterprise with the defendants Burtin and Beaman. It was alleged that those defendants operated a joint enterprise for several years prior to November 19, 1957, and that the defendant stockyard company owned the stockyard which consisted of docks to load and

unload livestock, pens covered by a roof, alleys, runways, and scales; that Burtin and Beaman occupied pens and alleyways and used the scales of the stockyard company and charged a commission for each animal sold; that when livestock was brought to the stockyard, it was unloaded at docks at the south side of the stockyard by employees of the stockyard company where it was marked for identification, and a record was made of the name of the seller, the number and type of stock and which commission firm would sell the stock, and a copy of the record was delivered to the seller and commission firm; that when livestock was to be sold through Burtin and Beaman, the same was placed in their pens; that Burtin and Beaman received bids from buyers of stock and when the stock was sold it was driven down the alleyway north to the scales maintained and operated by the stockyard company where the stock was weighed and driven into pens in the north part of the stockyard; that after the stock was weighed it belonged to the purchasers; that the employees of the stockyard company who weighed the stock prepared weight tickets and gave the same to Burtin and Beaman who, from those records, gave the seller weight tickets together with the records of the livestock company; that the seller took those tickets and records to the office of the stockyard company, located in a two-story building where Burtin and Beaman had their office, and the seller was paid by Burtin and Beaman upon presentation of his weight tickets. The purchaser was also given a carbon copy of the weight tickets. It was alleged the seller of the stock did not receive the full amount of the sale price but that Burtin and Beaman deducted therefrom yardage fees and a fire insurance premium which they paid to the stockyard company, and a commission fee which they paid to themselves. Plaintiff alleged he did not know what percent of the sale price of the livestock was charged for yardage, fire insurance, and commission, but those matters were peculiarly within the knowledge of the defendants, and further, that there was an agreement between the stockyard company and the commission firm with respect to such joint enterprise but that such facts were peculiarly within the knowledge of those defendants and he was unable to plead the agreement in any greater detail.

At the outset it should be observed that as against the defendants' demurrers, a liberal construction should be given the plaintiff's amended petition. It alleged the Parsons Stockyard Company and

Burtin and Beaman were engaged in a "joint enterprise," and in this court all of the parties cite and discuss authorities relating to "joint adventure." In applying the law of negligence, there is no distinction to be drawn between joint adventure and joint enterprise. The rule is stated in 30 Am. Jur., Joint Adventures, § 56, p. 982, to the effect that although there is a distinction between the term joint enterprise as used in the law of negligence, and the term joint adventure as defined in that article, "it is clear that the parties to a joint adventure may be deemed participants in a joint enterprise for the purposes of the application of the tort rule of imputed negligence." See, also, 48 C. J. S., Joint Adventures, § 14e, p. 870. Under the doctrine of joint enterprise or joint adventure the negligence of one participant in such enterprise or adventure may be imputed to another participant so as to render the latter liable for an injury sustained by a third person as the result of the negligence. The law considers that each is the agent of the other, and the acts of one within the scope of the enterprise or adventure may be charged against the other. (*Howard v. Zimmerman,* 120 Kan. 77, 79, 242 Pac. 131; *Whan v. Smith,* 130 Kan. 9, 11, 285 Pac. 589; *Schmid v. Eslick,* 181 Kan. 997, 1002, 317 P. 2d 459, and cases cited.)

It is unnecessary to define precisely the term "joint adventure," but suffice it to say it is an association of two or more persons to carry out a single business enterprise for profit. (*Whan v. Smith,* supra; *Curtis v. Hanna,* 143 Kan. 186, 53 P. 2d 795.) A joint adventure can exist only by the agreement of the parties. (*Whan v. Smith,* supra.) The agreement may be found in the mutual acts and conduct of the parties. (*National Bank v. Hoover,* 114 Kan. 394, 218 Pac. 1003; *Howard v. Zimmerman,* supra; *Curtis v. Hanna,* supra; *Grannell v. Wakefield,* 169 Kan. 183, 186, 217 P. 2d 1059.) While courts do not treat joint adventure in all respects as identical with a partnership, it is so similar in its nature and in the contractual relations created thereby that the rights and liabilities as between the adventurers are governed practically by the same rules that govern partnerships. (*Whan v. Smith,* supra; *Curtis v. Hanna,* supra; *Flitch v. Boyle,* 147 Kan. 600, 602, 78 P. 2d 9.) The usual test of a partnership as between the parties to a joint adventure is their intent to become partners. Joint ownership of property is not essential to create the relationship; it is only a circumstance which should be considered with other circumstances. (*Grantham v. Conner,* 97 Kan. 150, 154 Pac. 246; *Grannell v. Wakefield,* supra.)

Where a petition discloses a series of correlated facts and circumstances some of which meet some one of the tests regarded as a standard for determining such relationship, under the rule as laid down in *Potts v. Lux,* 161 Kan. 217, 166 P. 2d 694, the existence of such relationship may be considered to be sufficiently pleaded when attacked by a demurrer. In the Potts case it was said:

"Numbered among the often approved tests to which we have referred are the following: Intention of parties to the contract; sharing in profits and losses; charging of losses against accumulated profits; community of control over management and direction of the business; active participation in management of the affairs of the enterprise; joint control and exercise of ownership over all or part of the business assets; participation in division of the net earnings; sharing in payment of expenses of operation; fixing of salaries by joint agreement; investment in the business of undistributed profits for the purpose of building up a substantial cash reserve; division of undistributed profits in the event of liquidation contingent upon repayment to one of the parties of cash originally invested in capital." (l. c. 222.)

Giving the amended petition all the favorable inferences to which it is entitled and the liberal construction which we are required to give it, we are of the opinion it tends to show that by their mutual acts and conduct, these defendants were associated together in a joint adventure with equal privileges to control the method and means of accomplishing the purchase and sale of livestock for profit and to prescribe the conditions and use of the yard for that purpose. (*Whan v. Smith,* supra.) In reaching this conclusion, we point out that we are dealing with a ruling on a demurrer to an amended petition. In drawing reasonable inferences in favor of that pleading, we do not wish to be understood as passing upon them as true. It cannot be stated at this point just what the evidence will show the relationship to be between the Parsons Stockyard Company and Burtin and Beaman. Many of the elements of the relationship, whatever it is, may be shown by proof of surrounding facts and circumstances including proof of the agreement between these defendants. Some of the matters defendants argue should be in the petition are within the sole knowledge of the defendants. (*Grannell v. Wakefield,* supra.) On this point the rule is stated in 71 C. J. S., Pleadings § 10, p. 28, as follows:

"Facts peculiarly within the knowledge of the other party ordinarily may be alleged with less certainty and particularity than would otherwise be necessary, and may sometimes be omitted entirely; but the pleader should state his reasons for the omission or lack of particularity."

The allegations of the amended petition remain susceptible to proof by substantial evidence and before a decision can be made on the merits of plaintiff's allegations, evidence will have to be introduced to determine whether a joint adventure existed in fact between the stockyard company and the commission firm.

As previously indicated, plaintiff charged each defendant with concurrent negligent acts which proximately caused his injuries and damages. There is nothing alleged which would require us to hold that the stockyard company committed any direct negligent act which proximately caused the plaintiff's injury. A cause of action is the wrong done, not the measure of compensation or character of the relief sought. When the pleader has stated the facts of his case, he will be entitled to recover thereon just what such facts authorized. Despite the fact that the plaintiff has misconceived the legal effect of his allegations, he should be given whatever relief the facts entitle him to. (*Foster v. Humburg,* 180 Kan. 64, 67, 299 P. 2d 46; *Crabb v. Swindler, Administratrix,* 184 Kan. 501, 504, 337 P. 2d 986; *Ablah v. Eyman,* 188 Kan. 665, 680, 365 P. 2d 181, 90 A. L. R. 2d 766.) Once the plaintiff has established a joint adventure between the stockyard company and the commission firm, and proved the other allegations of his amended petition, liability is imposed upon the stockyard company, not by concurrent acts of negligence, but through the relationship of joint adventure or joint enterprise on the theory that Burtin's and Beaman's negligence, if any, is imputed to it as a member of the enterprise under the rule noted above. (38 Am. Jur., Negligence, §§ 253, 254, pp. 942, 943, 944; Anno: 48 A. L. R. 1061.)

Did the district court err in overruling the remaining defendants' demurrers? The appellees Burtin and Beaman contend that (1) the negligent retention of Burt as an unfit and incompetent employee is insufficiently alleged, and (2) at most, the allegations of the amended petition are that Burt committed assault and battery upon the plaintiff, and since the action was not commenced within one year thereafter, it is barred by G. S. 1949, 60-306, *Fourth.* The appellee Burt, like Burtin and Beaman, contends the amended petition charged him with the commission of assault and battery upon plaintiff and he asserts the action is barred by the same statute of limitations. We are not persuaded the contentions are meritorious. Under the rule announced in *Murray v. Modoc State Bank,* 181 Kan. 642, 313 P. 2d 304, we think the plaintiff has alleged a cause

of action against defendants Burtin and Beaman and the individual defendant Burt on the theory of negligence which was not barred by G. S. 1949, 60-306, *Fourth.* (*Hackenberger v. Travelers Mutual Cas. Co.,* 144 Kan. 607, 610, 611, 62 P. 2d 545.)

It would require a tortured construction of the amended petition to arrive at the conclusion that the plaintiff's cause of action against those defendants was for assault and battery. The gravamen of a civil assault and battery is grounded upon the actor's intention to inflict injury. (*Hershey v. Peake,* 115 Kan. 562, 223 Pac. 1113; *Hackenberger v. Travelers Mutual Cas. Co.,* supra; *Murray v. Modoc State Bank,* supra; 4 Am. Jur., Assault and Battery, § 3, p. 126.) In the Murray case, the distinction between assault and battery and negligence was clearly stated:

"This subject has been thoroughly discussed in earlier decisions of this court and the law is now clear that the fundamental distinction between assault and battery, on the one hand, and negligence, on the other, is that the former is *intentional* and the latter is *unintentional.* . . ." (l. c. 646.)

Here, there are no allegations of malice or intention to do bodily harm to plaintiff by raising his legs in the air, or of any intention to subject him to assault and battery, and there is no claim for punitive damages. On the contrary, it is alleged that plaintiff was injured by Burt's negligent conduct. The act of Burt consisted of a farcical prank involving rude, boisterous play with no intention to do bodily harm. His conduct was that of a buffoon, putting into practice a practical joke in the nature of "horseplay." He was "having a little fun," so to speak, with the plaintiff and unintentionally caused the injuries inflicted. One who plays a dangerous practical joke on another takes the risk that his victim may not appreciate the humor of his conduct, but that does not relieve him from liability where, as here, there was no consent. (Restatement of the Law, Torts, § 13, p. 30.) The term "negligent conduct" was defined in the Hackenberger case as follows:

"'. . . an act which the actor as a reasonable man should realize as involving an unreasonable risk of causing an invasion of an interest of another.'" [Restatement, Torts, § 284.] (l. c. 611.)

We think the amended petition is not susceptible of an interpretation that Burt intentionally inflicted plaintiff's injuries. It stated a cause of action founded on negligence and not on assault and battery. That being the case, the two-year period of limitations ap-

plies, and the defendants' contention that the action is barred by G. S. 1949, 60-306, *Fourth,* cannot be sustained.

The doctrine of *respondeat superior* is not here involved. This is a common-law action charging the master with actionable negligence in retaining an incompetent and unfit employee, and it is unnecessary to determine whether Burt was acting within the scope of his employment. In *Murray v. Modoc State Bank,* supra, it was held:

"A master may be liable for injuries to a third person which are the direct result of the incompetence or unfitness of his servant where the master was negligent in employing the servant or in retaining him in employment when the master knew or should have known of such incompetence or unfitness of the servant." (Syl. ¶ 1.)

See, also, *Balin v. Lysle Rishel Post No. 68,* 177 Kan. 520, 280 P. 2d 623.

The allegations are that Burtin and Beaman knew or had reason to know of Burt's propensities for over one year, and eight separate acts of "horseplay" involving physical force upon persons lawfully in and around the stockyard were alleged. Also, that Burtin was present in the pen at the time the plaintiff was injured but made no protest against Burt's act or took any measure to protect the plaintiff. Giving the allegations all reasonable inferences, we think it must be said that Burt was an incompetent and unfit employee retained by Burtin and Beaman after they knew or had reason to know of his propensities, and that the plaintiff has alleged a cause of action against them on the theory of negligence.

The foregoing conclusions require us to order a reversal of the case with directions to the district court to overrule defendants' demurrers to plaintiff's second amended petition.

It is so ordered.

JACKSON, J., not participating.

PARKER, C. J., and PRICE, J., dissent from (c) of the syllabus and the corresponding portion of the opinion.