2 Kan. App. 2d 302 (1978)
578 P.2d 1121
CAROLYN SUE HOLLINGER, Appellant,
v.
JANE C. STORMONT HOSPITAL AND TRAINING SCHOOL FOR NURSES, a Corporation, Appellee.
No. 49,112
Court of Appeals of Kansas.
Opinion filed May 19, 1978.
Petition for review denied July 17, 1978.
Robert D. Ochs and Charles S. Fisher, Jr. of Fisher, Ralston, Ochs and Heck, of Topeka, for the appellant.
Edwin D. Smith of Fisher, Patterson, Saylor & Smith, and Wayne T. Stratton of Goodell, Cogswell, Stratton, Edmonds, Palmer & Wright, of Topeka, for the appellee.
Before FOTH, C.J., SPENCER and SWINEHART, JJ.
SPENCER, J.:
In a suit for damages for personal injuries, the jury returned its verdict in favor of defendant and plaintiff has appealed.
On September 28, 1971, plaintiff was selling and delivering newspapers to patients and employees in defendant hospital. Plaintiff was in the front lobby of the hospital with a bag of tightly packed newspapers resting on her left shoulder when Danny Rome, who was employed by defendant as a janitor, approached her from behind and attempted to remove a newspaper from the bag. In the process, Rome lifted or jerked the bag in such a manner that plaintiff was injured.
Rome was first employed by defendant in September, 1969, and for most of the time his work had proved unsatisfactory. It was known to defendant that Rome had a tendency to talk with others rather than complete his assigned work; that he was careless in failing to return his equipment to proper storage areas; and that on one occasion a visitor to the hospital had slipped and fallen in an area where Rome was spray-buffing without having first displayed appropriate warning signs. Rome was repeatedly the subject of administrative discussion and attempts to improve his work habits. On November 25, 1969, the director of housekeeping prepared a report on Rome as follows:

*304 "This report is written about the happenings with Mr. Dan Rome regarding his employee and work relations here at Stormont-Vail Hospital.
"1. Mr. Rome consistently disregards instructions given him by supervisors,
"2. He is not willing to put forth the effort to do a good job without strict supervision or someone assigned to assist every minute,
"3. He cannot be trusted to complete work assignments properly,
"4. He either does not have the capability or his attitude is such that he is not willing to learn from just criticism,
"5. Due to all of the above reports, the emergency area has deteriorated due to the complete stripping and refinishing which is quite time consuming,
"6. Conversations and lack of interest also a factor of this report, and
"7. Finally, having considered all of the above points, I recommend Mr. Rome to be placed on a wall washing job only, knowing that if this does not work out satisfactorily to both parties, Mr. Rome will be terminated. A given amount of time approximately two weeks will be probationary."
On September 3, 1971, his supervisor prepared a memo on Rome stating in part:
"... This employee never does complete a job to the expectancy of a good Housekeeping employee. The man has been warned several times by me alone, and when he does work it is in a haphazard way, his equipment is laying around, is dangerous to patients and other employees. Dan Rome has a habit of stopping work and talking to any one that comes along."
This memo suggested that Rome be terminated but also indicated that termination should be delayed for thirty days "to bring this employee into shape...." There was evidence that the injuries to plaintiff occurred because Rome was attempting to play a prank or a practical joke on her and Rome testified that, at the time of the accident, he was teasing plaintiff and attempting to have some fun with her. There was also evidence that defendant permitted plaintiff on the hospital premises for the purpose of selling and delivering newspapers to patients, employees, and supervisory personnel and that defendant permitted employees of the hospital to buy newspapers from her.
The petition alleged two causes of action: First, that defendant was liable under the doctrine of respondeat superior because Rome was acting within the permitted and accepted scope of his employment at the time of plaintiff's injury; and, second, that defendant was negligent in failing to exercise reasonable care in the selection, employment, training, control, and retention of Rome as an employee. The petition was subsequently amended to allege gross negligence and wanton and reckless conduct on the *305 part of defendant and to seek an additional amount as punitive damages. Issues were joined, discovery completed, and on August 13, 1974, the court sustained defendant's motion for summary judgment as to the first cause of action (respondeat superior) and as to plaintiff's claim for punitive damages. The motion for summary judgment was overruled as to the second cause of action and the case went to the jury on plaintiff's theory of negligence.
Pertinent portions of instructions No. 2 and No. 3 as given to the jury are as follows:
"INSTRUCTION NO. 2
...
"The plaintiff claims that she was injured and sustained damages as a direct result of the negligence of the defendant. Specifically, plaintiff alleges:
"(a) That Danny Joe Rome was an incompetent or unfit employee of the defendant;
"(b) That defendant was negligent in employing said Danny Joe Rome and in retaining him in its employment when said defendant knew or should have known of such incompetence or unfitness of said Danny Joe Rome; and
"(c) That plaintiff was injured and sustained damages as a direct result of the incompetence and unfitness of defendant's servant, Danny Joe Rome.
"In order for plaintiff to recover on her claim against the defendant, plaintiff must sustain the burden of proving the foregoing allegations.
"The defendant denies that it was negligent in employing and retaining in its employment Danny Joe Rome, that plaintiff was injured as a direct result of any incompetence and unfitness on the part of its employee, Danny Joe Rome, and that plaintiff has sustained damages to the extent claimed.
...
"If the jury finds from all the evidence that the plaintiff has met the burden of proof on each of the allegations concerning which the burden of proof rests upon said plaintiff and that the defendant has failed to meet the burden of proving its affirmative defense of contributory negligence, then you should return a verdict in favor of plaintiff.
...
"If the plaintiff sustained the burden of proving all the allegations of her claim and the defendant sustained the burden of proving that plaintiff failed to avoid or minimize damages, then the jury should reduce the amount of plaintiff's recovery by any amount of damages which could have been avoided by plaintiff by the exercise of reasonable care and diligence."
"INSTRUCTION NO. 3
"An employer may be negligent when it has reason to know that an employee, because of his qualities, is likely to harm others. If the dangerous quality of the agent causes harm, the principal may be liable under the rule that one initiating conduct having an undue tendency to cause harm is liable therefor. The dangerous quality in the agent may consist of his incompetence or carelessness.
"Such an employer is not liable merely because the employee is incompetent or careless. If liability results, it is because, under the circumstances, the employer *306 has not taken the care which a reasonable and prudent man would take in selecting or retaining the employee for the work at hand. What precautions must be taken depend upon the situation. One can normally assume that another who offers to perform simple work is competent.
"Liability results under this rule not because of the employer-employee relationship of the parties, but only if the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment. The employer is subject to liability only for such harm as is within the risk. If, therefore, the risk exists because of the quality of the employee, there is liability only to the extent that the harm is caused by the quality of the employee which the employer had reason to suppose would be likely to cause harm. However, it is not necessary that the precise nature of the injury alleged by plaintiff should have been foreseen by the defendant."
At the appropriate time, plaintiff objected to the giving of instruction No. 3 because the instruction was not clear and it failed to instruct the jury in accordance with the plaintiff's theory of the case.
On appeal, plaintiff has analyzed instruction No. 3 by lifting various words and phrases from the text suggesting the impact each may have had on the deliberations of the jury. It does not appear that the specific defects now referred to by plaintiff were brought to the attention of the trial court, although the general objection to the instruction was argued at some length. K.S.A. 60-251(b) provides that no party may assign as error the giving or failure to give an instruction unless he objects thereto before the jury retires "stating distinctly the matter to which he or she objects and the grounds of his or her objection unless the instruction is clearly erroneous...." See also, Bott v. Wendler, 203 Kan. 212, 453 P.2d 100 (1969).
It is argued that the basic law of the case and the issues and theories upon which the jury should have been instructed are to be found in the cases of Balin v. Lysle Rishel Post No. 68, 177 Kan. 520, 280 P.2d 623 (1955), Murray v. Modoc State Bank, 181 Kan. 642, 313 P.2d 304 (1957), and Stricklin v. Parsons Stockyard Co., 192 Kan. 360, 388 P.2d 824 (1964). This argument overlooks certain fundamental differences. In Stricklin, the employer had or should have had knowledge of its employee's dangerous inclination toward pranks and practical jokes. In Murray, the bank had knowledge of its managing officer's violent dislike for plaintiff and his inability to control his emotions. In this case, defendant had knowledge that Rome was not doing his work properly, had displayed a lack of interest in his job, and that the haphazard way *307 in which he did work and left his equipment around was dangerous to patients and other employees. The resulting situation is nearer that in Balin since there as here defendant had little or no knowledge of its employee's propensity for dangerous "horseplay." In Balin, it is said:
"A master may be liable for injuries to a third person which are the direct result of the incompetence or unfitness of his servant where the master was negligent in employing the servant or in retaining him in employment when the master knew or should have known of such incompetence or unfitness of the servant." (Syl. 4.)
"A master is not liable for injuries inflicted by one employee upon another employee when the act which caused the injury was not authorized by the master, was not done to promote the master's business and was not part of the employee's duties." (Syl. 5.)
Because of factual differences, the district court determined that the rule as stated in Stricklin and in Murray was too broad, and relied upon Restatement (Second) Agency, § 213, to provide a narrower instruction better suited to the facts in this case. The gist of instruction No. 3 is that there must be some causal relationship between the dangerous propensity or quality of the employee, of which the employer has or should have knowledge, and the injuries suffered by the third person; the employer must, by virtue of knowledge of his employee's particular quality or propensity, have reason to believe that an undue risk of harm exists to others as a result of the continued employment of that employee; and the harm which results must be within the risk created by the known propensity for the employer to be liable.
General principles to be followed by an appellate court in determining whether instructions of the trial court are in error are set forth in Bechard v. Concrete Mix & Construction Inc., 218 Kan. 597, 545 P.2d 334 (1976), as follows:
"(1) The function of instructions is to advise the jury with respect to the law governing all issues joined by the pleadings upon which evidence is adduced and to advise the jury regarding the verdicts it is possible to render on the evidence actually adduced....
"(2) The jury should be instructed on the law applicable to the theory of both parties so far as they are supported by any competent evidence....
"(3) It is not necessary for a court to instruct the jury on an issue made by the pleadings if not supported by the evidence....
"(4) Instructions should be impartial, accurate statements of the law and drawn with careful attention to supporting authorities....
"(5) Instructions should be stated in brief, simple language that would be clear and understandable to laymen....
"(6) Instructions should be general in nature insofar as possible, and should *308 not be argumentative or unduly emphasize one particular phase of the case. Stated in another way, jury arguments should be left to the summations of counsel....
"(7) A court should not single out a particular theory or circumstance and give it undue emphasis although the requested instruction correctly states the law....
"(8) Instructions are to be considered together and read as a whole, without isolating any one instruction....
"(9) If jury instructions properly and fairly state the law as applied to the facts in the case when considered as a whole, and if the jury could not reasonably be misled by them, the instructions should be approved on appeal...." (218 Kan. at 600-601.)
With these principles in mind, we note that by instruction No. 2 the jury was charged that, in order for the plaintiff to recover, she must prove that Rome was an incompetent or unfit employee, that defendant was negligent in employing and retaining Rome when defendant knew or should have known of such incompetence or unfitness, and that plaintiff was injured and sustained damages as a direct result of the incompetence and unfitness of Rome; and, if plaintiff was successful in doing so and defendant did not prove its affirmative defenses, a verdict in favor of plaintiff was to be returned. Considered with instruction No. 3, the jury was fully instructed as to plaintiff's theory of the case. Instruction No. 3 is somewhat lengthy. However, an instruction may be lengthy, involve all conditions of the right of a party to recover, and set out those conditions in detail. Hospital Co. v. Odd Fellows, 99 Kan. 488, 162 Pac. 302 (1917). Instruction No. 3 in its totality adequately sets forth the law applicable to this case as supported by competent evidence, is impartial and not argumentative, and when considered with instruction No. 2 and the other instructions given could not reasonably have misled the jury.
After deliberations had commenced, the jury made inquiry of the court as follows:
"Could we have a definition of the words `incompetent' or `unfit,' as they are used in the instructions to the jurors on page 2, part a?
"Does this imply a certain period of his employment, or are we to decide if he was fit or unfit the entire time of his employment?
"In part `b' in instruction 2, does the word `employing,' the first time it appears, mean `hiring,' or does it mean employing, as the time he worked there?
"Part `b' is a two part statement, and uses the conjunction `and' to separate the two parts. Can we construe this as `or' also?"
After conferring at some length with counsel for both sides, the *309 court prepared a response which was given to the jury as follows:
"...
"In response to your question the Court informs the jury that such words as `incompetent' or `unfit' refer to personal qualities, characteristics or propensities of the employee which one could reasonably anticipate would create an unreasonable risk of harm to others.
"And in further response to your questions, the Court informs the jury that if the Defendant hospital created or permitted an unreasonable risk of harm to persons entering or using the hospital by retaining Danny Joe Rome in its employment, said hospital would be liable for any harm which occurred as a direct result of such unreasonable risk. However, the hospital is not responsible for every conceivable risk created but only for those risks which a prudent man in the position of the hospital would consider unreasonable.
"The foregoing response should be construed in the light of and in harmony with Instructions previously given by the Court. If this response is unclear or does not fully answer your questions, you are free to so indicate.
"..."
Plaintiff argues that the court did not properly define the words "incompetent" and "unfit" and failed to respond to certain of the remaining written inquiries of the jury. K.S.A. 1975 Supp. 60-248(e), then in effect, provided:
"After the jury has retired for deliberation, if they desire to be informed as to any part of the law or evidence arising in the case, they may request the officer to conduct them to the court, where the information on the point of law shall be given, or the evidence shall be read or exhibited to them in the presence of, or after notice to, the parties or their counsel."
The matter of responding to the request of a jury for further information on the law or evidence in a case, made after the jury has retired for deliberations, is generally addressed to the discretion of the trial court. State v. Sully, 219 Kan. 222, 547 P.2d 344 (1976). Circumstances may create a duty of the trial court to clarify its former instructions by giving additional information as provided by K.S.A. 60-248(e) and the failure to do so may constitute reversible error. State v. Bandt, 219 Kan. 816, 549 P.2d 936 (1976); State v. Bullocks, 2 Kan. App.2d 48, 574 P.2d 243, rev. denied 223 Kan. clxxii (1978). As stated in Bandt:
"... We wish to make it clear that instances may sometimes occur in the course of a trial where the jury raises questions which are irrelevant or which are already adequately covered by the original instructions. Under those circumstances the trial court may decline to answer such questions and direct the jury to reread the instructions already given. A trial court is vested with a great amount of discretion in answering questions directed to him by a jury after the jury has begun its deliberations. The important consideration is that the jury be properly *310 instructed on the essential issues presented at the trial...." (219 Kan. at 823-824.)
The trial judge made no attempt to respond with precision to each and every inquiry made by the jury. However, it is apparent that his response was compatible with the instructions initially given and that the jury was properly instructed on the essential issues presented at trial. It is equally apparent that the jury accepted the response as sufficient and made no further inquiry. We find no abuse of discretion.
Prior to trial and in the course of granting a partial summary judgment in favor of defendant, the trial court stated that the case would go to trial on the theory set forth in Stricklin v. Parsons Stockyard Co., supra. At the close of the evidence, plaintiff offered her requested instructions No. 3 and No. 4 which the court refused to give, even though as argued by plaintiff there is direct authority for them in Stricklin.
As noted earlier, the rules enunciated in Stricklin and in Murray were considered too broad for the facts of this case and the court correctly formulated a narrower instruction. Furthermore, the substance of plaintiff's requested instruction No. 3 appears in instruction No. 2 which the court did give to the jury. The rule that requested instructions are properly refused when the substance is contained in the instructions given is too well established in this jurisdiction to require extensive discussion. Canfield v. Oberzan, 196 Kan. 107, 410 P.2d 339 (1966); Kettler v. Phillips, 191 Kan. 486, 382 P.2d 478 (1963); Goldman v. Bennett, 189 Kan. 681, 371 P.2d 108 (1962). Requested instruction No. 4 was weighted in favor of the plaintiff's case and could easily have confused and misled the jury, and refusal to give that instruction was entirely proper. The fact that the district court departed from the strict language of Stricklin and Murray to formulate an instruction better suited to the facts of this case does not constitute error. Instructions should not be composed by carving from opinions certain statements which are applicable or controlling only in those cases in which they appear. Instructions should be general in their nature and should not emphasize certain factors and omit others in such manner that they, in effect, become argumentative. Kerby v. Hiesterman, 162 Kan. 490, 178 P.2d 194 (1947).
Error is urged in the granting of summary judgment in favor of *311 defendant upon plaintiff's theory of respondeat superior. Plaintiff relies heavily upon the decision in Williams v. Community Drive-in Theater, Inc., 214 Kan. 359 520 P.2d 1296 (1974), and contends that, since many of defendant's employees bought newspapers and read them while on the job, the buying and reading of newspapers was within the scope of Rome's employment. Plaintiff argues that the court focused upon the wrong act in determining whether Rome was acting within the scope of his employment when the injury occurred, suggesting that consideration should have been given to the act of buying a newspaper rather than determining whether the act of playing a practical joke was within the scope of his employment.
Plaintiff's injuries were not caused by the act of purchasing or reading a newspaper but occurred when Rome attempted to pull a newspaper out of the bag plaintiff was carrying. Rome states that, although he did not intend to hurt plaintiff, he was teasing her and attempting to have a little fun with her that day. The act which resulted in plaintiff's injuries was Rome's prank and had little or nothing to do with the purchase or reading of a newspaper.
An employee is acting within the scope of his authority when he is performing services for which he has been employed or when he is doing anything which is reasonably incidental to his employment. The test is not necessarily whether the conduct was expressly authorized or forbidden by the employer, but whether such conduct should have been fairly foreseen from the nature of the employment and the duties relating to it. The liability of an employer for the acts of his employee depends not upon whether the injurious act of the employee was willful and intentional or was unintentional, but upon whether the employee, when he did the wrong, was acting in the prosecution of the employer's business and within the scope of his authority or had stepped aside from that business and had done an individual wrong. The now generally recognized rule is that the employer is liable for the reckless, willful, intentional, wanton, or malicious acts of his employee as well as for his heedless and careless acts if they are committed while the employee is acting in the execution of his authority and within the course of his employment, or with a view to the furtherance of his employer's business, and not for a purpose personal to the employee. Williams v. Community *312 Drive-in Theater, Inc., supra. See also, Beggerly v. Walker, 194 Kan. 61, 397 P.2d 395 (1964). It is indeed difficult to comprehend how Rome's conduct which resulted in plaintiff's injury could be within the scope of his authority or reasonably incidental to his employment. Rome's conduct in this instance could not reasonably have been foreseen from the nature of his employment or the manner in which he performed his duties. His act could only have been for a purpose personal to him. If an assault by an employee is motivated entirely by personal reasons such as malice or spite or by a desire to accomplish some unlawful purpose, and does not have for its purpose the furtherance of the employer's business, it will be considered personal to the employee and not such as will make the employer answerable. Williams v. Community Drive-in Theater, Inc., supra; Murray v. Modoc State Bank, supra.
Finally, plaintiff alleges error in the granting of summary judgment against her claim for punitive damages. Having determined that the trial court was not otherwise in error, this point is now moot. McDonald v. Bauman, 199 Kan. 628, 433 P.2d 437 (1967); Watkins v. Layton, 182 Kan. 702, 324 P.2d 130 (1958). Moreover, there was no evidence in this case that the defendant or its employees realized there was an imminent danger of Rome playing a dangerous prank upon a visitor. Without prior notice of Rome's propensity for pranksterism, there could be no wanton or reckless disregard of plaintiff's rights.
Judgment affirmed.