IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 111,590

EMMA MCELHANEY,
*Appellant*,

v.

CHARLES THOMAS, LARRY THOMAS, SUSAN THOMAS,
and
STATE FARM,
*Appellees.*

SYLLABUS BY THE COURT

1.

Civil battery is the unprivileged touching or striking of one person by another, done with the intent of bringing about either a contact or an apprehension of contact that is harmful or offensive.

2.

An intent to injure is a necessary element of the intentional tort of battery.

3.

The "intent to injure" element of a civil battery claim can be satisfied in alternative ways—either by (1) an intent to cause a harmful bodily contact, that is, to cause the other physical injury; or by (2) an intent to cause an offensive bodily contact, that is, to invade the other's reasonable sense of personal dignity. Both states of mind are sufficiently culpable to justify imposing civil battery liability for damages, including any actual physical injury that is legally caused by the resulting bodily contact.

1

4.

The contrary language in *Stricklin v. Parsons Stockyard Co.*, 192 Kan. 360, 388 P.2d 824 (1964), along with the nebulous concept of "horseplay" as a legal category, is disapproved.

Review of the judgment of the Court of Appeals in an unpublished opinion filed July 17, 2015. Appeal from Riley District Court; MERYL D. WILSON, judge. Opinion filed December 1, 2017. Judgment of the Court of Appeals affirming the district court is affirmed in part and reversed in part. Judgment of the district court is affirmed in part and reversed in part, and the case is remanded with directions.

*Jeremiah Johnson*, of Law Offices of Jeremiah Johnson, LLC, of Olathe, argued the cause and was on the briefs for appellant.

*Dana M. Harris*, of Harris and Hart, LLC, of Leawood, argued the cause, and *Emily A. Yessen,* of the same firm, was with him on the brief for appellees Charles Thomas, Larry Thomas, and Susan Thomas.

*Toby Crouse*, of Foulston Siefkin LLP, of Overland Park, argued the cause, and *Stephen M. Kerwick* and *Craig W. West*, of the same firm, of Wichita, were on the briefs for appellee State Farm.

The opinion of the court was delivered by

STEGALL, J.: In 2008, Charles Thomas, then a student at Clay County High School, drove his parents' Ford F-150 truck over fellow-student Emma McElhaney's feet in the high school parking lot. The incident caused significant injury to McElhaney and led to a complex and tangled string of lawsuits, dismissals, refiled claims, venue transfers, and other sundry maneuverings involving Thomas, McElhaney, Thomas' parents, and the assorted insurance companies.

In the end, most of McElhaney's claims were dismissed by the district court; Thomas conceded he was negligent; and the case was submitted to a jury solely on the appropriate measure of McElhaney's actual damages. McElhaney accepted the jury's award of actual damages but appealed the adverse rulings on her other claims. A majority of a Court of Appeals' panel affirmed the district court, and we granted review.

At this stage of the litigation, four issues remain: (1) whether the district court properly dismissed McElhaney's intentional tort claim against Thomas; (2) whether the district court properly denied her request to add a claim for punitive damages against Thomas; (3) whether the district court properly dismissed her negligent entrustment claim against Thomas' parents; and (4) whether the district court properly dismissed McElhaney's uninsured motorist claim against her own insurance company.

We note upfront we have not ventured upon a lengthy untangling of the confusing procedural history behind McElhaney's third and fourth claims on appeal. Such an undertaking is unnecessary because after a thorough review, we conclude the Court of Appeals correctly held: (1) the negligent entrustment claim was barred by res judicata; and (2) the undisputed facts demonstrated that McElhaney was not entitled to recover on her uninsured motorist claim as a matter of law. With respect to these claims, we adopt the Court of Appeals opinion—both its account of the underlying procedural and substantive facts and its analysis of the legal issues—and affirm these holdings.

Avoiding the tortured path of these properly dismissed claims permits us to focus on, and clarify, the issue at the heart of this dispute—did the district court properly evaluate the evidence concerning Thomas' state of mind and its impact on the legal theories and damages properly available to McElhaney pursuant to Kansas law? Here, we conclude the district court erred when it dismissed McElhaney's intentional tort claim and denied her request to seek punitive damages.

3

## FACTUAL AND PROCEDURAL BACKGROUND

In the spring of 2008, Thomas and McElhaney were both students at Clay County High School. Thomas, a senior, played on the baseball team, and McElhaney, a sophomore, was the team's manager. The day of the incident, both were in the parking lot headed to the team bus to travel to an away game. Thomas was in the process of relocating his parents' truck closer to the bus so he would not have to walk as far when the team returned. A teammate, Adam Slagle, was with Thomas.

At the same time, McElhaney was walking through the parking lot with another student, Andrew Hecker. As the two approached the bus, Thomas saw them and approached from behind. McElhaney heard the truck and moved toward the curb to avoid being hit. The front-passenger tire of the truck then rolled onto McElhaney's feet, trapping her. With her feet caught under the tires, McElhaney fell to the ground. Hecker yelled at Thomas to back up, which he did. McElhaney realized she could neither stand nor walk, so Slagle lifted her into the cab of the truck so Thomas could drive her to the bus to receive medical aid. McElhaney was later taken to a hospital, at which point an emergency responder contacted the police to report the accident.

These basic facts are not in dispute. Instead, the parties' disagreement centers on Thomas' state of mind. McElhaney testified that after Slagle set her inside the truck, Thomas said, "Oh, my gosh, I'm so sorry. I just meant to bump you." In an affidavit, Hecker likewise claimed Thomas said that "he only meant to bump into Emma with his truck." In the accident report, the investigating officer noted that Slagle said Thomas was "messing around." Thomas, however, denied ever saying he meant to bump McElhaney. He maintains he merely pulled too close to McElhaney while attempting to park.

4

McElhaney's first petition alleged Thomas was liable for damages under both negligence and intentional tort theories. The intentional tort claim alleged that "[o]n or about April 15, 2008, Defendant intentionally ran into Plaintiff with his truck, causing painful and permanent injuries." In the next paragraph, McElhaney asserted, "Perhaps intending to only bump into her with his truck, Defendant Charles Thomas ran over both of Emma McElhaney's feet."

McElhaney then timely moved to amend her petition to add a punitive damages claim against Thomas. McElhaney cited her deposition testimony as well as Hecker's affidavit to support her claim that Thomas intended to bump her with the truck. She claimed that Thomas' "actions were reckless at best and willful, wanton, and/or with malice at worse." Thomas responded by denying any intention to bump her with the truck, citing his own deposition testimony in support.

The district court held a hearing on the motion and, following arguments from counsel, denied McElhaney's request to add a punitive damages claim against Thomas. The district court found McElhaney had failed to carry her burden "to determine a probability that [she] will prevail on [her] claim in a clear and convincing standard of proof." Following this ruling, but during the same hearing, the parties sought clarification of the court's ruling as it related to whether McElhaney could proceed to trial on her intentional tort claim.

After several exchanges, the district court concluded:

"Here's what I'm gonna do:  There is nothing in the final pretrial order that says anything about . . . an intentional claim. If you're . . . desiring to proceed under an intentional theory at this point, since it was in the [p]etition[,] I will allow you to amend the pretrial order to make that claim."

McElhaney then asked the court whether proceeding "on an intentional claim" would allow the court to "revisit the Motion for Punitive damages at that point if the jury finds it was an intentional act?" The Court responded, "I think I have to, if it was intentional." The court memorialized its order as follows:

> "As to defendant Charles Thomas, plaintiff's claim for punitive damages is based upon the allegation that . . . his intent was to scare or bump into the plaintiff. Even if the plaintiff's evidence is viewed in a light most favorable to her, the statement by the defendant that 'I only meant to bump into you' does not rise to the level of an intentional tort. Although to act (bump) may have been intentional the resulting injury or intent to injure was not intentional.

> "The plaintiff has failed to meet her burden that is required to support a claim for punitive damages and said claim is therefore denied."

Before the parties submitted a final pretrial order, McElhaney moved to dismiss her case without prejudice. The defendants opposed the motion to dismiss, fearing McElhaney was simply trying to avoid the court's earlier rulings. As such, the defendants asked the court to either deny the motion outright or place conditions on any refiling to ensure the court's prior rulings would remain in effect. The district court declined and simply granted the motion to dismiss without prejudice, stating: "I don't think it's appropriate that I enter any orders that would anticipate something that may or may not happen. I have confidence in whatever judge that might be . . . ."

Three months later, McElhaney refiled her claims, again alleging Thomas was liable for damages under both negligence and intentional tort theories. In this respect, the language of the second petition was identical to the first. Once again, Thomas denied any intentional tort liability. Eventually, the case ended up in front of the same district court judge who had presided over *McElhaney I*.

6

Having now come full circle, Thomas filed a "motion to enforce previous orders." The motion asked the court to reinstate its previous rulings. After considering the motion at a hearing, the court stated:

> "Other than the passage of time, I haven't heard anything, or heard any additional facts which would in any way persuade me to reconsider those previous rulings; and therefore, I'm gonna grant the motion which . . . [denied] the punitive damages against Charles Ryan Thomas, unless, of course, it's—the case proceeds under the intentional tort, as I previously had ruled. So it's my intent to just reinstate those orders in this case."

In response, McElhaney filed a "renewed" motion to add a claim for punitive damages. But at the pretrial conference held on February 6, 2014, the district court reiterated, "[T]here is nothing that changes my opinion of my ruling from what I previously entered, and there's nothing willful and wanton about the actions."

The parties proceeded to argue about whether McElhaney had sufficiently pled and produced evidentiary support for her intentional tort claim. After hearing arguments, the district court ruled as follows:

> "Well, I've reviewed the various pleadings in this case and the motions, and as it relates to the intentional tort theory, I believe the law in the State of Kansas is that not only must there be—for an intentional tort not only must there be a battery and that definition, but there also must be an intent to injure. And in the pleadings it does not allege any intent to injure by Mr. Thomas. And in fact, one of . . . the motions says something about was no intent to harm. But there's no . . . evidence of any intent to harm or injure. So for those reasons and the reasons previously stated I'm not going to allow the jury to decide the intentional tort. I believe it's simply horseplay, as I've previously ruled, and on that grounds, the negligence grounds, the defendant has admitted to negligence. So that's my ruling on the intentional tort."

Finally, the district court granted Thomas' motion in limine excluding any evidence that he "intended to bump" McElhaney. The district court conducted a 3-day jury trial beginning on February 11, 2014. Because Thomas admitted liability for negligence, the jury was tasked primarily with determining the amount of McElhaney's actual damages. It eventually returned a total award of $46,333 comprised of present and future medical expenses, present and future noneconomic losses, and economic loss to date.

While the jury was deliberating, McElhaney's counsel made a proffer that McElhaney and Hecker would have testified that Thomas said he intended to bump her. She also would have called the officer to testify that Slagle said Thomas was "screwing around, and was just trying to bump into Emma." McElhaney's attorney also stated he would have called Slagle to testify, even though he was unsure of what Slagle would have said on the witness stand. According to counsel, this evidence would have been sufficient to permit a reasonable jury to find in McElhaney's favor on both the intentional tort claim and the punitive damages claim.

McElhaney timely appealed, raising numerous issues, including the four issues preserved for our review. The panel unanimously affirmed the district court's rulings, including those dismissing McElhaney's negligent entrustment and uninsured motorist claims—holdings we summarily affirm, as noted above.

Turning to the district court's dismissal of the battery claim, the panel reviewed our prior caselaw—*Stricklin v. Parsons Stockyard Co.*, 192 Kan. 360, 366, 388 P.2d 824 (1964), in particular—and concluded that in Kansas, the tort of battery requires an "intent to cause injury." *McElhaney v. Thomas*, No. 111,590, 2015 WL 4486791, at *3 (Kan. App. 2015) (unpublished opinion).The panel also characterized this element as an "intent to do physical harm." 2015 WL 4486791, at *4. The court then found that McElhaney's

8

pleadings failed to allege Thomas intended to physically injure her or cause bodily harm, "either through actual intent or through an inference from the nature of the act when the result of the act would be substantially certain." 2015 WL 4486791, at *5. Moving from the pleadings to the evidence, the panel concluded that "[t]here is simply no evidence to support a claim that Thomas had any intent to injure McElhaney." The majority went so far as to construe McElhaney's petition as asserting that Thomas "had no intent to injure her." And indeed, McElhaney averred to the district court that Thomas "did not mean to injure her." 2015 WL 4486791, at *12. Thus, the Court of Appeals found that under either a judgment on the pleadings standard or a summary judgment standard, Thomas was entitled to prevail on McElhaney's battery claim as a matter of law. 2015 WL 4486791, at *6.

Reviewing the district court's denial of McElhaney's motion to add a punitive damages claim, the Court of Appeals concluded the language in McElhaney's petition "undermines her argument that she should have been allowed to bring a claim for punitive damages. In her petition, she makes no allegation of malicious or wanton conduct and even asserts that [Thomas] had no intent to injure her." As such, a majority of the panel held "the district court did not abuse its discretion when it found that there was not a probability that she would prevail on a punitive damages claim." 2015 WL 4486791, at *12.

Chief Judge Thomas Malone dissented from the punitive damages portion of the opinion. According to Chief Judge Malone, viewing the facts in a light most favorable to McElhaney required the court to assume Thomas intended to bump her with his truck. He concluded: "Engaging in 'horseplay' by bumping a pedestrian with a 2-ton truck clearly meets the definition of a wanton act." Chief Judge Malone would have reversed this portion of the district court's rulings and remanded solely to allow a jury to consider

9

McElhaney's punitive damages claim. 2015 WL 4486791, at *18-19 (Malone, C.J., concurring in part and dissenting in part).

ANALYSIS

As we have already explained, we are convinced the Court of Appeals properly explained, analyzed, and affirmed the district court's rulings with respect to McElhaney's negligent entrustment and uninsured motorist claims. There is no need to recapitulate that discussion here. Succinctly put, we agree that "principles of res judicata, specifically claim preclusion, prevent McElhaney from raising the same negligent entrustment claim in *McElhaney II* that was already fully decided in *McElhaney I*." We likewise agree with the Court of Appeals that the uncontested material facts developed in district court demonstrated that "Charles was not uninsured" and thus "there was no basis to add the uninsured motorist carrier." 2015 WL 4486791, at *8, 13 (Kan. App. 2015) (unpublished opinion).

This leaves only the connected, though not identical, remaining questions of whether McElhaney should have been able to present her battery and punitive damages claims to the jury. Boiled down, we perceive the essence of the matter to be whether an "intent to bump" another person with a Ford F-150 truck, if proved, can establish the legally requisite culpable state of mind to sustain both a battery and a punitive damages claim. It is clear McElhaney pleaded an "intent to bump." It is also clear the evidentiary record, though contested, would have been more than sufficient for a jury to reasonably conclude that Thomas intended to bump McElhaney with the truck. None of the various lower court opinions suggest otherwise. Therefore, in whatever procedural format the question is embedded (motion for punitive damages, motion for judgment on the pleadings, motion for summary judgment, etc.) the outcome turns on the answer to a purely legal question over which we exercise plenary review—*viz.*, must McElhaney

10

plead and produce evidence that Thomas intended to cause physical injury or bodily harm in order to present her battery and punitive damages claims to a jury? We answer—no.

It is worth pausing here to note that the widely accepted and unchallenged definition of intent is not at issue. Kansas has long followed the definition of intent found in the Restatement (Second) of Torts (1965). Such intent "can be actual or it can be inferred from the nature of the act when the consequences are substantially certain to result from the act." *Thomas v. Benchmark Ins. Co.*, 285 Kan. 918, 933, 179 P.3d 421 (2008) (relying on and adopting the black letter law of civil battery as set forth in the Restatement [Second] of Torts [1965]). Likewise, the lower courts in the instant case correctly understood that intent denotes "'that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.'" *McElhaney*, 2015 WL 4486791, at *4 (quoting Restatement [Second] of Torts § 8A [1965]). But the focus of our inquiry today is not on the presence or absence of intent qua intent, but rather on the object of that intent—intent to do what? In this case, to "bump" a pedestrian with a full size pickup truck.

The lower courts determined that an "intent to bump" was insufficient because the civil tort of battery requires an intent to physically injure or do bodily harm—something beyond a mere bumping. Looming large in that legal calculus are our decisions in *Thomas* and *Stricklin*.

Battery is "the unprivileged touching or striking of one person by another, done with the intent of bringing about either a contact or an apprehension of contact[] that is harmful or offensive." PIK Civ. 4th 127.02; see *Baska v. Scherzer*, 283 Kan. 750, 756, 156 P.3d 617 (2007). It has regularly been said that "an intention to injure is a prerequisite in battery cases." *Murray v. Modoc State Bank*, 181 Kan. 642, 646, 313 P.2d 304 (1957). Or, as we stated more recently in *Thomas*, the actor "must have intended both

11

the act and to cause some kind of injury or damage." 285 Kan. at 933. Thus, in response to the question, "intent to do what?" we have traditionally answered:  "intent to injure."

While discussing the character of Thomas' act, the district court went so far as to say that Thomas did not have an intent to injure because his actions were "simply horseplay." The "horseplay" shadowland of tort law was kindled—at least in Kansas—by our decision in *Stricklin*. Indeed, the panel below relied heavily on that decision:

> "In *Stricklin*, a stockyard employee was known for playing pranks or practical jokes on customers. Stricklin was sitting on a board on top of a cattle pen when the employee grasped Stricklin's feet and lifted him into the air causing him to lose his balance and fall 6 feet to the concrete floor below. As a result, Stricklin suffered serious injuries. The defendants moved to dismiss the case arguing that Stricklin's claims sounded in tort for assault and battery, not negligence as pled, and they were filed outside the statute of limitations. The Kansas Supreme Court held that there was no allegation of malice or intent to do physical harm. The employee's actions were *nothing more than horseplay*, with no intent to injure Stricklin. Although '[h]is conduct was that of a buffoon' his actions were no more than 'a farcical prank involving rude, boisterous play with no intention to do bodily harm.' 192 Kan. at 366, 388 P.2d 824." (Emphasis added.) *McElhaney*, 2015 WL 4486791, at *3.

The panel went on to observe that the

> "language in *Stricklin* requiring malice or an intent to do physical harm is consistent with the Restatement (Second) of Torts § 13 (1965), which states that a person will be subject to liability for battery if he or she 'acts intending to cause a harmful or offensive contact with the person of the other' and 'a harmful contact with the person of the other directly or indirectly results.'" 2015 WL 4486791, at *4.

Given the language we employed in *Stricklin* and *Thomas*, along with the panel's exclusive reliance on the Restatement (Second) of Torts § 13, the legal conclusions

drawn by the lower courts in this case are unsurprising. However, we take this opportunity to correct an error in our prior caselaw.

We do not shy from our prior holdings that an intent to injure is a necessary element of the civil tort of battery in Kansas. But the precise nature of the injurious intent necessary to sustain a battery claim must be understood in light of the personal interests protected by the common law tort of battery:

> "The original purpose of the courts in providing the action for battery undoubtedly was to keep the peace by affording a substitute for private retribution. [Citation omitted.] The element of personal indignity involved always has been given considerable weight. Consequently, the defendant is liable not only for contacts which do actual physical harm, but also for those relatively trivial ones which are merely offensive and insulting. [Citation omitted.] Spitting in the face is a battery, [citation omitted] as is forcibly removing the plaintiff's hat, [citation omitted] or any other contact brought about in a rude and insolent manner. . . .

> "The defendant may be liable when intending only a joke, [citation omitted]. . . . The plaintiff is entitled to protection according to the usages of decent society, and offensive contacts, or those which are contrary to all good manners, need not be tolerated. At the same time, in a crowded world, a certain amount of personal contact is inevitable, and must be accepted." Prosser and Keeton on Torts § 9, 41-42 (5th ed. 1984).

Indeed, the Restatement (Second) of Torts (1965) expressly defines two separate categories of injurious intent. First is the intent to do actual physical or bodily harm. Restatement (Second) of Torts § 13 (1965). However, the Restatement also recognizes a second, alternative injurious intent when the actor intends to cause an "offensive contact" and an offensive contact with the person of the other directly or indirectly results. Restatement (Second) of Torts § 18 (1965). "A bodily contact is offensive if it offends a reasonable sense of personal dignity." Restatement (Second) of Torts § 19 (1965).

13

The intent to cause an offensive contact qualifies as an injurious intent because "the plaintiff's grievance consists in the offense to the dignity involved in the unpermitted and intentional invasion of the inviolability of his person and not in any physical harm done to his body." Restatement (Second) of Torts § 18, comment d (1965). Thus, liability for battery is "based upon [the actor's] intentional invasion of the other's dignitary interest in the inviolability of his person and the affront to the other's dignity." Restatement (Second) of Torts § 18, comment e (1965). Finally, if there is an intent to inflict an offensive contact but no intent to inflict a physical injury, yet bodily harm nonetheless results, the actor is still "liable to the other for a battery . . . although the act was not done with the intention of bringing about the resulting bodily harm." Restatement (Second) of Torts § 16 (1965). As such, to sustain a claim for battery "it is enough" for the plaintiff to show that the defendant "intend[ed] to bring about an offensive contact . . . and that the bodily harm results as a legal consequence from such offensive contact." Restatement (Second) of Torts § 16, comment a (1965).

We adopt these standards as our own. The "intent to injure" element of a civil battery claim can be satisfied in alternative ways—either by (1) an intent to cause a harmful bodily contact, that is, to cause the other physical injury; or by (2) an intent to cause an offensive bodily contact, that is, to invade the other's reasonable sense of personal dignity. Both states of mind are sufficiently culpable to justify imposing civil battery liability for damages, including any actual physical injury that is legally caused by the resulting bodily contact.

The contrary language in *Stricklin*, along with the nebulous concept of "horseplay" as a legal category, is disapproved. We caution that this holding does not imply that a jury cannot consider and determine the fine gradations of intent or lack thereof that may be present in any of the infinite varieties of human contacts. The standards set forth here provide a framework within which juries should and must have the final say. Therefore,

14

while the concept of horseplay has no legal meaning, it may in fact have meaning to a jury as it deliberates on the precise contours of the behavioral expectations society has for its members. In order to reach a jury, though, it is enough for a plaintiff to come forward with some evidence from which a reasonable jury could conclude the defendant acted with the requisite intent.

Given this, we have no difficulty concluding that McElhaney satisfied her initial burden of pleading and producing some evidence that Thomas acted with an intent to injure. Even if he did not intend to cause any physical harm to McElhaney, the intent to bump her with a Ford F-150 truck is sufficient, by itself, to allow a reasonable jury to conclude that he acted with an intent to offend—to invade McElhaney's reasonable sense of personal dignity. The district court erred by effectively granting summary judgment against McElhaney on her intentional tort claim.

We turn now to the district court's denial of McElhaney's request to add a claim for punitive damages. Specifically, the district court ruled:

> "Even if the plaintiff's evidence is viewed in a light most favorable to her, the statement by the defendant that 'I only meant to bump into you' does not rise to the level of an intentional tort. Although to act (bump) may have been intentional the resulting injury or intent to injure was not intentional."

K.S.A. 60-3703 allows a plaintiff to file "an amended pleading claiming punitive damages" when the "plaintiff has established that there is a probability that the plaintiff will prevail." In order to prevail on such a claim with the fact-finder, the plaintiff must demonstrate "by clear and convincing evidence . . . that the defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud or malice." K.S.A. 60-3701.

15

Generally, we review a decision to allow or disallow a claim for punitive damages for abuse of discretion. *Osterhaus v. Toth*, 291 Kan. 759, 793, 249 P.3d 888 (2011); *Fusaro v. First Family Mtg. Corp.*, 257 Kan. 794, 804, 897 P.2d 123 (1995). It is an abuse of discretion to base a decision on an error of law. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

When making the threshold determination under K.S.A. 60-3703, we have long held:

> "[T]he trial court is not to usurp the role of the jury. Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts remain jury functions. The trial court is to consider the evidence presented in the opposing affidavits as well as other evidence in a light most favorable to the party moving for the amendment, and if the evidence is of sufficient caliber and quality to allow a rational factfinder to find that the defendant acted towards the plaintiff with willful conduct, wanton conduct, fraud, or malice, the trial court shall allow the amendment. This is another way of saying that amendment will be allowed when plaintiff has established that there is a probability that plaintiff will prevail on a punitive claim." *Fusaro*, 257 Kan. 794, Syl. ¶ 3.

In passing, we observe that *Fusaro* arguably altered the statutory standard for making the threshold determination of whether a plaintiff has established a probability of success on the requested punitive damages claim. But no party has raised this question, and we have not been asked to depart from our settled caselaw in this area.

Thus, if McElhaney's battery claim should have survived summary judgment, as we have already determined, the evidence was necessarily of sufficient caliber to permit a rational factfinder to find Thomas acted towards McElhaney in a willful manner. The district court's error of law—that an intent to bump was insufficient to satisfy the

16

elements of civil battery—fatally infected its decision to disallow McElhaney's claim for punitive damages. Applying the *Fusaro* test, McElhaney was entitled to present her claim for punitive damages to the jury solely by virtue of her battery claim.

Finally, given that the evidence was sufficient to permit a rational fact-finder to find willful conduct, it was necessarily also sufficient to allow a rational fact-finder to find Thomas' conduct was wanton. "The general rule of negligence has no application to willful or wanton wrongs. A willful wrong involves an intentional act and intentional injury. A wanton wrong involves an intentional act but not an intentional injury; the act is intentional and purposeful, but the consequences of the act are not." *Bowman v. Doherty*, 235 Kan. 870, 876, 686 P.2d 112 (1984); see *Beck v. Kansas Adult Authority*, 241 Kan. 13, 33, 735 P.2d 222 (1987) (providing the same definitions); *Gould v. Taco Bell*, 239 Kan. 564, 572, 722 P.2d 511 (1986) (applying the *Bowman* definitions in the context of punitive damages). McElhaney has not argued that Thomas acted with either malice or fraud.

Having found these two errors, we are left to fashion a remedy. This case is unusual, however, in that the parties do not contest or otherwise dispute the amount of actual damages already awarded as a result of Thomas' negligence. Thomas argues that because of this, even if McElhaney should have been able to proceed on her battery claim, the error was harmless. We are required to disregard as harmless any error or defect that does not affect the substantial rights of the parties. K.S.A. 2016 Supp. 60-261; see *State v. Ward*, 292 Kan. 541, 565, 256 P.3d 801 (2011); see also *Critchfield Physical Therapy v. The Taranto Group, Inc.*, 293 Kan. 285, 310, 263 P.3d 767 (2011). "The burden of demonstrating K.S.A. 60-261 harmlessness for a nonconstitutional error is on the party benefitting from the error." *Kansas City Mall Assocs. v. Unified Gov't of Wyandotte County/KCK.*, 294 Kan. 1, 8, 272 P.3d 600 (2012).

17

Thomas is correct that McElhaney cannot recover any new actual damages for battery. See *Rose v. Via Christi Health System, Inc.*, 276 Kan. 539, 557, 78 P.3d 798 (2003), *opinion modified on reh'g* 279 Kan. 523, 113 P.3d 241 (2005) (plaintiffs are not entitled to have defendants pay twice for the damages they have caused). But given that McElhaney is entitled to present her claim for punitive damages to a jury, we cannot presume that the evidentiary case for or against her battery claim—and the jury's findings in that regard—can or would have no impact on either the jury's determination to award or not award punitive damages or on the district court's determination of the amount of the award, should it come to that.

As such, having reversed the Court of Appeals and the district court on these two claims of error, we remand this matter to the district court for trial to determine the following limited questions: (1) Thomas' liability only (as opposed to actual damages) for the civil tort of battery; and (2) Thomas' liability for punitive damages as a result of either willful or wanton conduct.

The Court of Appeals and the district court are affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

ROSEN, J., not participating.
MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1] **REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 111,590 vice Justice Rosen under the authority vested in the Supreme Court by K.S.A. 20-2616.