Robert F. MAY, Deputy Manager of the Western Conference of Teamsters Pension Trust Fund, Plaintiff-Appellant,

v.

INTERSTATE MOVING & STORAGE CO., Defendant-Appellee.

No. 82–2542.

United States Court of Appeals, Tenth Circuit.

July 23, 1984.

Julianne McCabe, Boulder, Colo., for plaintiff-appellant.

David Evans of Bagley, Hickey, Evans & Statkus, Cheyenne, Wyo., for defendant-appellee.

Before BARRETT, BREITENSTEIN and McKAY, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This is an action by plaintiff-appellant, May, as Deputy Manager of the Western Conference of Teamsters Pension Trust Fund who is authorized to bring the action by the Trustees of the Fund. The action was originally brought in state court in Denver, Colorado, and was removed on diversity grounds pursuant to 28 U.S.C. § 1441. Jurisdiction is vested by the provisions of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1132(a)(3)(ii) and (e)(1). The Fund brought this action to recover $15,156.26 allegedly due it from defendant-appellee, the Interstate Moving and Storage Co., a Wyoming corporation. The jury returned a verdict of $5,389.27. To this amount the court added interest and gave the plaintiff judgment for $8,854.31. It also gave plaintiff $3,500 for attorney fees.

Prior to 1976, the Company and Teamsters, Chauffeurs, Warehousemen and Helpers Local Union No. 307 of Cheyenne, Wyoming, entered into a series of Collective Bargaining Agreements, CBAs, which each contained a provision relating to contributions by the Company to the Teamsters Pension Fund. The CBA effective September 1, 1965 to March 1, 1971, Deft's Ex. P, provided in its Art. 30 that:

"The Employer shall not be obligated for the life of this agreement to pay the premiums for part-time workers on the Pension Plan as set forth above."

Plaintiff's Exs. 4, 5, and 6 cover respectively the periods March 1, 1976 to March 1, 1977, March 1, 1977 to March 1, 1980, and March 1, 1980 to March 1, 1983, and each provides in its Art. 27 that:

"Regular employees are those employees who are so designated by the Employer at the inception of this Contract and those employees who have worked for the Employer and have acquired 60 days or more of eight (8) hours each, of employment with the Employer, within a 3 month period."

The same agreements provide in their Art. 30 that:

"Each Employer who is party to this Agreement shall contribute to the Western Conference of Teamsters Pension Trust Fund, the provisions of which the undersigned parties agree to accept and to abide by the rules and regulations established or as may be established by the Trustees of such Trust Fund, the applicable monthly sum as listed below for each regular employee covered by this Agreement who is on the payroll of the Employer at any time during such month."

(Effective dates and amounts vary.)

"Contribution for employees if the work is less than one month, the applicable weekly sum as listed below for each regular employee covered by this Agreement who is on the payroll of the Employer at any time during such week."

(Effective dates and amounts vary.)

"Contributions for each casual employee shall be the applicable sum as listed below for each day worked."

(Effective dates and amounts vary.)

"Contributions for casual employees used on a four (4) hour basis shall be paid at one-half (½) the amount of the above rates."

The word "casual" is not defined in the above mentioned agreements. The witness Cooper, the president of Interstate, testified that Interstate had no casual employees working for it. Tr.Vol. IV, p. 149. Plaintiff argues that the Employer owes contributions to the Trust Fund for all of its collective bargaining agreement unit employees for every hour worked by those employees. The employer admits that the CBAs call for contributions for regular employees and casual employees. It says that it has no casual employees but only part timers.

Plaintiff says that the contract between the parties was not ambiguous and, therefore, no jury question was presented. In making this argument, the Trust Fund relies on a separate set of documents, the pension certifications, Pltfs.Exs. 7–9. In each of these, the union and employer certified that a written pension agreement was in effect, generally included in a collective bargaining agreement, and that this agreement conformed to the Trustee Policy on Acceptance of Employer Contributions. The union and employer also agreed to be bound by and become parties to the trust declaration. Plaintiff argues that the CBAs, pension certifications, and trust declaration should be construed as one contract. The jury was so instructed in Instruction 2, R.Vol. I, p. 42, which stated that, "There is only one contract in this case and it is the sum total of the written agreements of the parties."

The pre-March 1972 CBAs between Local 307 and the moving and storage industry in Cheyenne had a clause that excluded pension payments for part-time employees. In March 1972 the CBA was amended to require pension contributions on casual employees. Local 307's representative Lloyd Long testified that regular employees were seniority employees who worked a forty-hour week, part-time employees worked more regularly than casuals but less than a forty-hour week, and casuals were persons who worked infrequently. Tr.Vol. IV pp. 95–97. Interstate president Cooper agreed with these definitions, Tr.Vol. IV, p. 149. The employer argues that because the pension clause requires contributions for regulars and casuals and the company does not employ casuals, but only part-timers, the contracts are ambiguous. In the light of this distinction between part-timers and casuals, supported by the change in language from prior contracts, the CBAs were ambiguous.

No language in either the Trust Policy on Acceptance of Employer Contributions or the Trust Fund Agreement and Declaration of Trust explains this ambiguity or requires a different result. Plaintiff argues that the provisions of the Trust Policy on Acceptance of Employer Contributions are violated if part-time employees are not covered until they reach seniority status. See Pltf's Ex. 18, Provisions 3 and 4; Appellant's Reply Brief at 4. These provisions are simply illustrative of the types of clauses that would result in possible rejection of a payment plan by the trustees. No such rejection is claimed. Plaintiff asserts that the definition of Pension Agreement in Art. 1, § 10 of the Agreement and Declaration of Trust, Pltf's Ex. 16, requires that casuals be read to include part-time employees. There is no such language. The Pension Agreement is defined as a written agreement requiring payments to the Trust Fund on behalf of union employees which excludes from the agreement employees not so represented.

There is an ambiguity as to whether part-time workers are included as casual employees. Once it has been determined that a contract is ambiguous and that its construction depends on extrinsic facts and circumstances, then the terms of the contract become questions of fact and are for the trier of fact, in this case the jury. See *Jaeco Pump Co. v. Inject-O-Meter Mfg. Co.* (10 Cir., 1972), 467 F.2d 317, 320 and *Metropolitan Paving Company v. City of Aurora* (10 Cir., 1971), 449 F.2d 177, 181. The court properly submitted the question to the jury.

Plaintiff sued to recover unpaid contributions to the Trust Fund in the amount of $15,156.26. In his closing argument the

attorney for the employer admitted that $3,028.05 was due. Tr.Vol. II, p. 35. The jury returned a verdict of $5,389.27 for the plaintiff. In his motion for a new trial the plaintiff contends (1) that the court erred in refusing to submit a key instruction to the jury, (2) the court's refusal to grant plaintiff's motion in limine allowed highly prejudicial and irrelevant evidence to be submitted to the jury, and (3) the verdict was either a compromise or based on speculation.

Plaintiff argues that the court erred in rejecting his tendered instruction on contract interpretation. The instruction read:

*"Whose Meaning Prevails*

Where the parties have attached different meanings to a promise or agreement or a term thereof, it is interpreted in accordance with the meaning attached by one of them if at the time the agreement was made (a) that party did not know of any different meaning attached by the other and the other knew the meaning attached by the first party; or (b) that party had no reason to know of any different meaning attached by the other, and the other had reason to know the meaning attached by the first party."

 The trial court's instructions are adequate if, taken as a whole, they sufficiently advised the jury of the parties' contentions and the law applicable thereto. *Commercial Iron & Metal Co. v. Bache Halsey Stuart, Inc.* (10 Cir., 1978), 581 F.2d 246, 250, cert. denied 440 U.S. 914, 99 S.Ct. 1229, 59 L.Ed.2d 463). The court instructed the jury on rules of construction to aid the jury in interpreting the contracts. The requested instruction would only have added confusion. It was properly rejected.

 Plaintiff says that the court erred in not granting his motion in limine filed a few days before the jury trial began. He says that the court ignored the law in permitting the Employer's witnesses to testify as to an oral modification of the contract. The Trust Fund argues that the court erred in the admission of prejudicial and irrelevant evidence that the employer relied on representations by the local union that it

need pay for only union members. Insofar as this argument is based on Fed.Rule Evid. 403 which states that evidence may be excluded if its probative value is substantially out-weighed by the danger of unfair prejudice, we have held that it is a matter within the discretion of the court. *Rigby v. Beech Aircraft Company* (10 Cir., 1977), 548 F.2d 288, 293. In any event the court directed a verdict on this point. At Tr.Vol. III, pp. 39–40, the court said:

"There can be waiver of the provisions of a third-party beneficiary contract, but that requires notice to the third-party beneficiary, and there is no indication of that here. As a consequence, I am granting the motion for directed verdict with respect to the first theory of the waiver. I will now instruct the jury on that, and I will advise them as a matter of law, there's no way.

The motion for directed verdict, however, with regard to the question of the number of employees covered and the amounts due is a matter for the jury to determine, by their consideration of the three agreements, not by the Court's."

Plaintiff argues that the jury verdict must be set aside because it was based on speculation or conjecture. The plaintiff requested $15,156.26. In closing argument the defendant's counsel admitted that $3,028.05 was due the plaintiff. The jury verdict was in favor of the plaintiff in the amount of $5,389.27. Neither party requested any special interrogatories. The trial court denied the motion for new trial in which the verdict was attacked.

Without objection by either party, the court instructed the jury, Vol. IV, p. 28:

"The plaintiff claims that the defendant owes contributions to plaintiff's employer, the Western Conference of Teamsters Pension Fund (Fund), under Collective Bargaining Contracts between defendant and Teamsters Local No. 307. Plaintiff alleges defendant owes contributions to the Trust Fund for all defendant's Collective Bargaining Unit employees for every hour worked by those employees.

The defendant admits that the Collective Bargaining Contracts call for contributions only for regular employees and casual employees. Defendant alleges that it has no casual employees as defined under the Collective Bargaining Contract. Defendant alleges that if contributions are owing the Fund for regular employees, the amount of contributions that would be owing is substantially lower than asked for by plaintiff."

In *Brown v. McGraw-Edison Company* (10 Cir., 1984), 736 F.2d 609, 616, opinion filed June 1, 1984, we held that:

"A motion for a new trial made on the ground that the verdict of the jury is against the weight of the evidence normally presents a question of fact and not of law and is addressed to the discretion of the trial court."

In that opinion we said that the standard we use in determining this is whether the verdict is "clearly, decidedly, or overwhelmingly" against the weight of the evidence, citing *Champion Home Builders v. Shumate* (10 Cir., 1967), 388 F.2d 806, 808. On review, we will not disturb the denial of a motion for new trial unless there is a showing of manifest abuse of discretion. *Walter v. Warner* (10 Cir., 1962), 298 F.2d 481, 484. In the case at bar, the jury verdict was within the range of liability claimed by the parties. The trial court did not abuse its discretion in denying the motion for new trial.

In his motion to enter judgment, plaintiff requested attorney's fees of $9,228.57 R.Vol. 1 pp. 64–65. This was amended to seek a total of $11,776.07, R.Vol. 1 p. 93. In its November 2, 1982 order granting judgment for plaintiff the trial court included reasonable attorney's fees in the amount of $3,500.00. The stated reasons for this determination were:

"based primarily on my assessment of the amount of time and labor reasonably required to prepare for and try the case; the result obtained which is considerably less than the result sought; the skill and experience of counsel which was characterized by a lack of efficiency, organiza-

tion and promptness, and my own familiarity with the fees paid for similar cases in this legal community." (R.Vol. 1 p. 99)

The court did not question the accuracy of the time requested but felt that the amount was unreasonable based on the foregoing considerations. Plaintiff argues that in 1980 Congress changed the language of 29 U.S.C. § 1132 to require the court to award reasonable fees, rather than leaving such an award to the discretion of the court, which was the practice under the statute before amendment. See ERISA Amendments of 1980, Pub.L. No. 96–364, § 306(b)(2), 94 Stat. 1295 (amending 29 U.S.C. § 1132(g)). While this is true there was no violation of the statute in the court's determination of a reasonable fee in this case. It conforms with the standards adopted by this court in determining reasonable fees in other contexts. See *Battle v. Anderson* (10 Cir., 1980), 614 F.2d 251; and *Francia v. White* (10 Cir., 1979), 594 F.2d 778.

Affirmed.