**Christopher FOSTER, Plaintiff,**

v.

**BOARD OF TRUSTEES OF BUTLER COUNTY COMMUNITY COLLEGE, et al., Defendants.**

**Gregory A. CLARK, Plaintiff,**

v.

**BOARD OF TRUSTEES OF BUTLER COUNTY COMMUNITY COLLEGE, et al., Defendants.**

**Civ.A. Nos. 89–1094–T, 89–1169–T.**

United States District Court, D. Kansas.

July 12, 1991.

---

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on the motions for new trial filed by defendant Douglas S. Pringle, Special Administrator for the Estate of George D. Johnson ("Pringle") (Doc. 152) and defendants Board of Trustees of Butler County Community College, Butler County Community College, and Randy Smithson (collectively, "the BCCC defendants") (Doc. 153). These consolidated personal injury actions were tried commencing February 4, 1991.

This case arose out of a motor vehicle collision occurring at the intersection of Airport/Yoder Road and U.S. Highway 50 in Reno County, Kansas on March 22, 1987. Plaintiff Christopher Foster was a passenger in a car driven by George Johnson. Johnson was travelling south on Airport Road. Plaintiff Gregory Clark was travelling east on Highway 50. Johnson failed to stop at the stop sign on Airport Road and collided with the tractor-trailer rig driven by plaintiff Clark. Johnson died as a result of the injuries he received in the accident. Foster and Clark were injured.

Foster, a native of Ohio, was a high school senior at the time of the accident. He was visiting Kansas on a recruiting visit at the request of defendant Randy Smithson, the head coach of the BCCC basketball team. Johnson picked Foster up at the Wichita airport at Smithson's request. Smithson had previously taken several other recruits to Hutchinson for the National Junior College Basketball Tournament. Contrary to the instructions given by Smithson, Johnson took Foster to Hutchinson to watch the game. Johnson telephoned Smithson from Hutchinson just pri-

or to the collision. Smithson told Johnson to bring Foster to El Dorado. Johnson was en route to El Dorado when the collision occurred. Additional facts will be discussed where necessary.

At the close of the evidence, the court directed a verdict in favor of the plaintiffs on the issue of respondeat superior, ruling that Johnson was the servant or employee of the BCCC defendants and was acting within the scope of his authority at the time of the accident. On February 27, 1991 the jury returned a verdict finding plaintiff Clark 10% at fault and defendants 90% at fault. Damages in the amount of $2,257,-000 were awarded to plaintiff Foster and in the amount of $302,000 to plaintiff Clark. After reducing the judgment by Clark's 10% fault, the court entered judgment in the amount of $2,031,300 in favor of Foster and $271,800 in favor of Clark. These motions for new trial followed.

Since the filing of the motions for new trial, plaintiff Foster has settled with the defendants. The court thereafter declined to exercise ancillary jurisdiction over an attorney fee dispute among various attorneys claiming a share of fees from the Foster settlement. The defendants have not settled with plaintiff Clark. The court shall therefore address the issues raised by the defendants as they apply to plaintiff Clark.

Defendant Pringle raises the following issues in his motion for new trial: (1) the verdict is contrary to the evidence; (2) the amount of damages awarded is so excessive as to appear to have been based on passion and prejudice; (3) the evidence is insufficient to sustain the verdict; and (4) the court improperly allowed the jury to consider testimony regarding Johnson's lack of liability insurance. Defendant Pringle filed a memorandum in support of his motion (Doc. 158) out of time but with leave of court.

The BCCC defendants raise the following issues: (1) the verdict is contrary to the evidence; (2) the amount of damages awarded is so excessive as to appear to have been based on passion and prejudice; (3) the court improperly allowed the jury to consider testimony regarding Johnson's lack of liability insurance coverage and evidence regarding the proof of insurance that must be provided by a student who is operating his own automobile in connection with a school function; (4) the court improperly refused to submit to the jury the questions of whether Johnson was the employee of BCCC and whether Johnson was operating within the scope of his employment at the time of the accident; (5) the court improperly refused to submit the issue of plaintiff Foster's comparative negligence to the jury; (6) the court improperly refused to allow testimony concerning plaintiff Clark's opinion that he considered the intersection where the accident occurred to be a dangerous one. In the alternative, the BCCC defendants move for remittitur. The BCCC defendants did not file a memorandum or brief in support of their motion.[1]

It is well settled that the "district court has broad discretion in deciding whether to grant a motion for a new trial." *Patty Precision Prods. Co. v. Brown & Sharpe Mfg.*, 846 F.2d 1247, 1251 (10th Cir.1988); *Royal College Shop v. Northern Ins. Co. of New York*, 895 F.2d 670, 677 (10th Cir. 1990). Such a motion may be granted when the court believes the verdict to be against the weight of the evidence, when prejudicial error has entered the record, or when substantial justice has not been done. *McHargue v. Stokes Division of Pennwalt Corp.*, 912 F.2d 394, 396 (10th Cir.1990); *Anderson v. Phillips Petroleum Co.*, 861 F.2d 631, 637 (10th Cir.1988); *Holmes v. Wack*, 464 F.2d 86, 88–89 (10th Cir.1972). Before a new trial will be granted, trial errors regarding admissibility of evidence and any other court rulings must affect the substantial rights of the parties. *Rasmussen Drilling, Inc. v. Kerr–McGee Nuclear Corp.*, 571 F.2d 1144, 1148–49 (10th Cir.),

---

1. The BCCC defendants apparently did not feel it necessary to file a legal memorandum of any sort. The court could summarily deny their motion for new trial pursuant to D.Kan. Rule 206(g). Nevertheless, since counsel for the BCCC defendants threatened appeal at various points during the trial of this case, the court takes this opportunity to explain its rulings.

*cert. denied,* 439 U.S. 862, 99 S.Ct. 183, 58 L.Ed.2d 171 (1978).

A motion for new trial which is grounded on the jury's verdict being against the weight of the evidence generally presents a question of fact, not law, and is committed to the discretion of the trial court. *Brown v. McGraw Edison Co.,* 736 F.2d 609, 616 (10th Cir.1984). On a motion for new trial alleging that the verdict is against the weight of the evidence, the court may weigh the evidence for itself. *Commons v. Montgomery Ward & Co.,* 614 F.Supp. 443, 449 (D.Kan.1985); 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2806, at 44–45 (1973). However, "the more sharply the evidence conflicts, the more reluctant the judge should be to substitute his judgment for that of the jury." 11 C. Wright & A. Miller, *supra,* § 2806, at 44. A new trial may be granted on this ground only when the verdict is clearly, decidedly, or overwhelmingly against the weight of the evidence. *May v. Interstate Moving & Storage Co.,* 739 F.2d 521, 525 (10th Cir.1984).

#### A. Contrary to the evidence/Insufficiency of the evidence

■ All defendants assert that the verdict is contrary to the evidence. Defendant Pringle also argues that the evidence adduced at trial is insufficient to sustain the verdict. None of the defendants elaborate any further.

The court has weighed the evidence for itself. From the court's observation of the demeanor of the witnesses, the court found the testimony of plaintiff Foster, his mother, plaintiff Clark and defendant Randy Smithson to be quite credible. It was stipulated that Johnson ran the stop sign at the intersection of Airport Road and Highway 50. This fact alone would have been sufficient to support a finding that Johnson was 100% at fault, notwithstanding the defendants' accident reconstructionist who opined that Clark committed several driving errors. The evidence certainly was sufficient to support a finding that defendants were 90% at fault for the accident. There were conflicts in the evidence regarding the nature and extent of the plaintiff Clark's injuries and damages. As will be more fully discussed in the next section, the evidence was sufficient to support the damages awarded. The verdict was not clearly against the weight of the evidence.

#### B. Excessiveness of Verdict

■ All defendants assert that the jury's verdict was so excessive as to appear to have been based on prejudice or passion. Defendant Pringle argues that the evidence of record does not support a verdict of $2,257,000 for Foster or $302,000 for Clark, or even the amount of the judgment after subtracting 10% for Clark's comparative fault. None of the defendants elaborate any further. The motion for new trial as it relates to the size of the verdict awarded to plaintiff Foster are moot. The court shall therefore address the damages awarded to Clark.

As with all of its functions as trier of fact, the jury has wide discretion in determining the amount of damages that will fairly compensate the aggrieved party. *Black v. Hieb's Enterprises, Inc.,* 805 F.2d 360, 362–63 (10th Cir.1986); *see also Menne v. Celotex Corp.,* 861 F.2d 1453, 1474 (10th Cir.1988) (plaintiff is not bound by the amount of relief requested in the complaint but only by the evidence adduced at trial). The court reviews the amount of damages awarded by the jury under the standards set forth in *Malandris v. Merrill Lynch, Pierce, Fenner & Smith,* 703 F.2d 1152 (10th Cir.1981) (en banc) (plurality opinion), *cert. denied,* 464 U.S. 824, 104 S.Ct. 92, 78 L.Ed.2d 99 (1983):

> [A]bsent an award so excessive as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial, the jury's determination of the damages is considered inviolate. Such bias, prejudice or passion can be inferred from excessiveness. However, a verdict will not be set aside on this basis unless it is so plainly excessive as to suggest that it was the product of such passion or prejudice on the part of the jury.

*Id.* at 1168 (citations and footnote omitted); *see also Acree v. Minolta Corp.,* 748 F.2d 1382, 1388 (10th Cir.1984).

The damage award to Clark is not so excessive as to shock the judicial conscience. The damages in this case included the normal personal injury damage components of past and future medical expenses, lost past and future income, pain and suffering and aggravation of pre-existing condition. The court also instructed the jury on loss of enjoyment of life as a component of the award for pain, suffering, disabilities, and disfigurement. Instruction 19; *see Leiker v. Gafford,* 245 Kan. 325, 778 P.2d 823 (1989).

The damage evidence on behalf of plaintiff Clark indicated that he suffered a back injury in the accident. He became unable to drive his truck following the accident. Clark resorted to working at a McDonald's restaurant earning $4.25 per hour when he was unable to find other work. Clark also testified that his back problems have interfered with his leisure and other activities. Clark submitted evidence of past medical bills in the amount of $5,706.33 (Exh. 40A–41), miscellaneous expenses in the amount of $995.95 (Exh. 42), lost income to date of $74,850 (Exh. 44) and lost future income in the discounted amount of $221,849 (Exh. 45–45A). Defense counsel extensively cross-examined the lost income witnesses and offered a competing interpretation of the income tax data and other evidence. Plaintiff Clark claimed total special damages in the amount of $303,400. Exh. 47. The actual award of $302,000, which includes an amount for pain, suffering, disability, mental anguish, loss of enjoyment of life, and aggravation of preexisting ailment or condition, is well within the range shown by the evidence. Bearing in mind that much of the jury's compensatory award is based on intangible items such as pain and suffering, the court will not disturb the jury's findings on this issue. *See Fudge v. City of Kansas City,* 239 Kan. 369, 380, 720 P.2d 1093 (1986). The record reflects no evidence to support a finding or passion or prejudice on the part of the jury, and it fully supports the amount of damages awarded to Clark by the jury.

## C. Evidentiary Rulings

Kansas as well as federal law provides that evidence having any tendency in reason to establish a material fact has probative value. *Schmeck v. City of Shawnee,* 232 Kan. 11, 32, 651 P.2d 585 (1982); *State ex rel. Hausner v. Blackman,* 7 Kan. App.2d 693, 698, 648 P.2d 249 (1982), *aff'd,* 233 Kan. 223, 662 P.2d 1183 (1983); Fed. R.Evid. 401 & advisory committee's note. As noted above, before a new trial will be granted, trial errors regarding admissibility of evidence must affect the substantial rights of the parties.

### 1. *Lack of liability insurance*

■ All defendants argue that allowing the jury to consider testimony of Johnson's lack of insurance was prejudicial. In his memorandum in support of his motion for new trial, defendant Pringle makes three arguments: (1) that the Federal Rules of Evidence generally prohibit the admission of insurance coverage; (2) lack of insurance is not relevant to the question of negligent appointment; and (3) the evidence should have been excluded under Fed.R.Evid. 403.

Plaintiffs sought to introduce evidence that Johnson did not have automobile liability insurance on the vehicle he used to transport Foster, that Johnson's vehicle was unregistered, and that Johnson did not have a valid driver's license. Plaintiffs sought to introduce this evidence to support a claim that the BCCC defendants were negligent in selecting Johnson to transport Foster. The court admitted this evidence over the defendants' objections. The court ruled that this evidence was not barred by Rules 411 and 403 of the Federal Rules of Evidence.

Rule 411 provides:

Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such

as proof of agency, ownership, or control, or bias or prejudice of a witness. Fed.R.Evid. 411. While Rule 411 does bar certain uses of insurance evidence, it is not an absolute bar. The purpose for which the plaintiffs offered the insurance evidence is not prohibited. The evidence was not admitted against Johnson to show that Johnson was negligent.

At trial, plaintiffs introduced evidence that the BCCC defendants were negligent in selecting Johnson as a gratuitous employee. An employer may be liable for injuries to a third person which are a direct result of the incompetence or unfitness of his employee when the employer was negligent in employing the employee or in retaining him in employment when the employer knew or should have known of such incompetence or unfitness. *Plains Resources, Inc. v. Gable*, 235 Kan. 580, 591, 682 P.2d 653 (1984). Johnson was unfit to drive a basketball recruit since he lacked a driver's license and liability insurance and his vehicle was not registered. The BCCC defendants could have discovered Johnson's unfitness for the task had any investigation been conducted. The evidence introduced by the plaintiffs was relevant to show the BCCC defendants' negligence. The evidence of Johnson's lack of liability insurance was relevant to show that the BCCC defendants failed to use due care in selecting Johnson to perform the task of transporting Foster.

■ Prior to admitting the evidence, the court considered and rejected the defendant's challenge under Rule 403 that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. The court again rejects any 403 challenge being made. The proffered evidence was very probative of the complete lack of investigation or inquiry into Johnson's background prior to entrusting Johnson with Foster's safety.

Over the plaintiffs' objections, the court declined to submit this direct negligence claim to the jury. This negligent selection or appointment claim was redundant once the court directed a verdict on the issue of agency and scope.

Any prejudicial effect of this insurance evidence (and the court does not believe that the mere mention of the word "insurance" results in unfair prejudice) easily could have been cured by a limiting instruction. The court proposed a limiting instruction (Proposed Instruction 7) dealing specifically with this insurance evidence, along with the evidence that Johnson did not have a valid driver's license or current vehicle registration. The defendants objected to the court's proposed limiting instruction, arguing that it would simply draw more attention to the evidence. Consequently, no limiting instruction was given. The defendants objected to the court's proposed limiting instruction and cannot now complain about its absence.

2. *BCCC transportation and vehicle policies*

■ In connection with the direct negligence claim and the evidence of Johnson's lack of insurance, the plaintiffs offered evidence of BCCC policies regarding use of college and personal vehicles. The BCCC Policies and Procedures Manual provides in pertinent part:

*College Vehicle Policy*

*College vehicles.* All persons, included students, employees, and noncollege personnel, must have a driving record review and clearance. Requests for students and noncollege employees to drive college vehicles must be approved by the Director of Buildings and Grounds. These requests must be in writing and forwarded through the Business Office. *Personal vehicles.* In cases when a college vehicle has been officially requested and is not available, the person making the request may be reimbursed for mileage if using a personal vehicle. In cases when an instructor or sponsor is not able to drive a college vehicle, a student with proof of current liability insurance may be permitted to use his/her car and be reimbursed for mileage with prior approval from the Director of Buildings and Grounds.

Plaintiffs' Exhibit 29, p. 70. The BCCC Athletic Policies and Procedures Manual

provides that "School transportation must be used whenever possible. Private cars should be used only with permission of the athletic director." Plaintiffs' Exh. 70, p. 23.

While these policies were not directly applicable since Johnson was not officially a coach, they indicated a general school policy of requiring an inquiry before allowing a teacher or coach to drive a BCCC vehicle and proof of liability insurance before allowing a student to use a personal vehicle for BCCC business. It was undisputed that Smithson did not obtain the permission of the athletic director before arranging for Johnson to transport Foster. This evidence was relevant to plaintiffs' claim that the BCCC defendants were directly negligent in appointing Johnson as a gratuitous employee charged with the duty of transporting Foster.

### 3. Clark's opinion on dangerousness

■ The BCCC defendants argue the court erroneously refused to allow defendants to ask Clark whether he thought the intersection in question was dangerous. The defendants do not elaborate any further. At trial, the court ruled that the defendants could not question Clark on Clark's opinion of the "dangerousness" of the intersection. The court did allow the defendants to inquire into whether Clark was familiar with the intersection and whether he was aware of accidents occurring there. Inquiring into Clark's opinion on "dangerousness" would not be helpful to the jury and would improperly appear to place the burden on Clark to take extra precautions while approaching this "dangerous" intersection.

The court has doubts on the relevance of such a line of questioning. If relevant, the slight probative value would be substantially outweighed by the danger of misleading the jury, justifying exclusion under Fed. R.Evid. 403. Questioning Clark on his opinion of the dangerousness of the intersection (and eliciting the desired admission that the intersection was, indeed, dangerous) would merely reinforce the notion that it was somehow incumbent on Clark to take

extra precautions at this intersection notwithstanding the fact that Clark had the right of way and had the right to assume that Johnson would stop at the stop sign. Clark did testify that he was familiar with that intersection, having driven through it several hundred times before. Clark also testified that he was cautious at that intersection. The court does not see how the slight limitation on defendants' cross-examination of Clark affected any substantial rights.

### D. Directed Verdict on Respondeat Superior

At the close of the evidence, the court directed a verdict on two issues: that Johnson was the servant or employee of BCCC and that Johnson was acting within the scope of his authority at the time of the accident. The BCCC defendants challenge this ruling.

The standard for determining whether to grant a motion for a directed verdict is not whether there is literally no evidence to support the party opposing the motion, but whether there is evidence upon which the jury could properly find a verdict for that party. *Brown v. McGraw–Edison Co.*, 736 F.2d 609, 612–13 (10th Cir.1984). The court may grant a motion for directed verdict only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position. *O.E.R., Inc. v. Hickerson*, 880 F.2d 1178, 1180 (10th Cir.1989); *Anderson v. Phillips Petroleum Co.*, 861 F.2d 631, 634 (10th Cir.1988). The evidence and the inferences to be drawn therefrom must be construed in a light most favorable to the nonmoving party. *O.E.R., Inc.*, 880 F.2d at 1180; *Hurd v. American Hoist & Derrick Co.*, 734 F.2d 495, 498 (10th Cir.1984). It is not the function of the court to weigh the evidence or make credibility determinations. *Hurd*, 734 F.2d at 499.

■ The issue of the existence of an agency relationship is normally a question of fact for the jury. *Traylor v. Wachter*, 3 Kan.App.2d 536, 543, 598 P.2d 1061 (1979), *aff'd in part, rev'd in part on other grounds*, 227 Kan. 221, 607 P.2d 1094

(1980). On appellate review, what constitutes agency and whether there is competent evidence reasonably tending to prove the relationship is a question of law. *Id.; see Hendrix v. Phillips Petroleum Co.,* 203 Kan. 140, 155, 453 P.2d 486 (1969); *First National Bank of Denver v. Caro Construction Co.,* 211 Kan. 678, 681, 508 P.2d 516 (1973). While the determination of what constitutes agency and whether there is any evidence tending to prove its existence is a question of law, the weight to be given the evidence and the resolution of conflicts therein are functions of the trier of fact. *Highland Lumber Co. v. Knudson,* 219 Kan. 366, 371, 548 P.2d 719 (1976). When there is no material conflict in the evidence, the terms of the contract are not ambiguous or disputed, and only one inference may be drawn, the question of whether the relation of employer and employee exists is one of law for the court; otherwise it is one of fact for the jury. *Houdek v. Gloyd,* 152 Kan. 789, 794, 107 P.2d 751 (1940). Under Kansas law, the controlling test in determining the existence of agency, so that the doctrine of respondeat superior would apply, is the right to control the purported employee. *Hendrix,* 203 Kan. at 155, 453 P.2d 486; *see also Hughes v. Jones,* 206 Kan. 82, 88, 476 P.2d 588 (1970). When agency relationship is in issue, the party relying on the existence of an agency relationship to establish his claim has the burden of establishing the existence of the relationship by clear and satisfactory evidence. *Highland Lumber Co.,* 219 Kan. at 370, 548 P.2d 719.

■ An employer is not liable for a tortious act committed by his employee, unless the act is done by authority of the employer, either express or implied, or unless the act is done by the employee in the course or within the scope of his employment. *Beggerly v. Walker,* 194 Kan. 61, 64, 397 P.2d 395 (1964). Under Kansas law,

An employee is acting within the scope of his authority when he is performing services for which he has been employed, or when he is doing anything which is reasonably incidental to his employment.

The test is not necessarily whether the specific conduct was expressly authorized or forbidden by the employer, but whether such conduct should have been fairly foreseen from the nature of the employment and the duties relating to it. *Williams v. Community Drive-in Theater, Inc.,* 214 Kan. 359, 364, 520 P.2d 1296 (1974) (quoting PIK 7.04); *Hollinger v. Jane C. Stormont Hospital and Training School for Nurses,* 2 Kan.App.2d 302, 311, 578 P.2d 1121 (1978). Whether an act is within the employee's scope of employment ordinarily presents a question to be determined by the jury. *Williams,* 214 Kan. at 365, 520 P.2d 1296 (quoting 53 Am.Jur.2d, *Master and Servant* § 427). The liability of the employer for the acts of the employee depends upon whether the employee, when he did the wrong, was acting in the prosecution of the employer's business and within the scope of his authority or whether he had stepped aside from the business and had done an individual wrong. *Hollinger,* 2 Kan.App.2d at 311, 578 P.2d 1121.

The determination of whether an employee was acting within the scope of his employment involves a consideration of the individual factual setting of each case, including objective as well as subjective considerations. *Focke v. United States,* 597 F.Supp. 1325, 1339 (D.Kan.1982). Several factors are relevant to the determination of scope of employment. First, the key consideration in determining whether an employee is acting within the scope of employment is the purpose of the employee's act rather than the method of performance. This calls for consideration of the objective circumstances of the incident as well as the subjective thoughts of the employee. *Id.* at 1340–41. Second, the court must examine whether the employee has express or implied authority to do the acts in question, although in certain situations, an employer may be liable for the acts of the employee, even if the acts are done in excess of the authority conferred. *Id.* at 1341. Third, the determination of whether an employee's acts are incidental to his employment involves a consideration of whether the employee's acts were reasonably foreseeable by the employer. Finally, the time at

which the agent commits the alleged wrongful act is a factor to be considered, although it is not accorded great weight. *Id.*

■ Defendants have not argued that Smithson lacked the authority to hire Johnson to assist in Smithson's recruiting duties. Johnson could be an employee or servant even though no compensation was paid or expected. Whether compensation was paid or not paid is not determinative. *See Williams v. Community Drive-in Theater, Inc.,* 214 Kan. 359, 367, 520 P.2d 1296 (1974) (despite the fact that the employee was not paid by her employer for her services, she was the employer's employee at the crucial time). Additionally, it is not necessary that there be a formal employment contract.

The evidence that Johnson was acting as the employee of Smithson and was acting within the scope of his authority came from the testimony of defendant Smithson. Smithson had the right to control and indeed exercised significant control over Johnson. Smithson testified that he instructed Johnson on what to do that evening. Smithson testified that he instructed Johnson to pick up Foster from the airport, get him something to eat, take him to the motel in El Dorado and await Smithson's return from Hutchinson. Smithson gave Johnson twenty dollars to pay for dinner. Smithson further testified that when Johnson called late that evening from Hutchinson, Smithson told Johnson to bring Foster back to El Dorado as quickly and as safely as possible. Smithson gave Johnson directions on the two routes available from Hutchinson to El Dorado, via Highway 96 or via Airport Road/Highway 50. Smithson indicated that he used the Airport Road/Highway 50 route. Smithson told Johnson to ask for directions to Airport Road from where Johnson was located.

■ Plaintiff's Exhibit 25 (Smithson's statement) indicates that Smithson initially intended Johnson to bring Foster to the basketball game in Hutchinson. Later, Smithson decided to have Johnson instead take Foster directly to the motel in El Dorado. Given this background, it would

be foreseeable that Johnson might take Foster to Hutchinson instead of El Dorado. Driving to Hutchinson would therefore be within the scope of the employment.

Assuming that Johnson had deviated from the scope of his employment by going to Hutchinson, Johnson re-entered the scope of his employment after he talked to Smithson. Smithson specifically directed Johnson to return to El Dorado. Johnson was performing the service for which he had been employed, in the manner in which he had been instructed, when the accident occurred. The purpose of Johnson's acts was to return Foster to El Dorado. Johnson had express authority to drive Foster back to El Dorado. It was (or should have been) reasonably foreseeable to Smithson that Johnson could become involved in an automobile accident on the way to El Dorado. Johnson committed the negligent act while he was performing the task which was appointed to him—taking Foster to El Dorado.

Defendants argued at trial that Johnson was only doing a favor for Smithson. Viewing the facts most favorably to the BCCC defendants, Johnson was a volunteer. He was doing a favor for Smithson. However, the fact that this undertaking was gratuitous is not fatal to the existence of an employer/employee relationship.

Defendants also argued that the phone call was a "red herring." If the telephone conversation between Johnson and Smithson never occurred, the court would be faced with a different set of facts. But, those are not the facts of this case. The phone call was a key fact indicating that, if Johnson had deviated from the scope of his employment by going to Hutchinson, he re-entered the scope of his employment by seeking and obtaining instructions from Smithson on his future course of action.

Construing the evidence in the light most favorable to the BCCC defendants, the evidence points only one way. There were no conflicts in the evidence. There was no evidence from which a reasonable mind could conclude that Johnson either was not the employee of BCCC or was not acting within the scope of his authority at the

time of the collision. There was no evidence upon which the jury could properly find for the BCCC defendants on the issue of employment and scope. Defendants have pointed to no such evidence in the record.

### E. Comparative Fault of Plaintiff Foster

■ The BCCC defendants argue that the court erred in refusing to allow the jury to consider the comparative negligence of plaintiff Foster. These defendants assert that Foster was negligent in riding in a vehicle that allegedly[2] was operating without its lights on during the dark of night on an unlit county road.

The court gave a standard instruction that Johnson's negligence would not be imputed to Foster. *See* PIK 2d 8.90. The court did not give the BCCC defendants' Requested Instruction 23:

> If a passenger has knowledge of danger and the circumstances are such that an ordinary person would speak out or take other positive action to avoid injury to himself, then it is his duty to do what the ordinary person would do under the circumstances. Unless such knowledge and circumstances exist, he may rely upon the driver to attend to the operation of the vehicle.

*See* PIK 2d 8.91. Under Kansas law, a passenger may be liable for negligence when (1) he failed to use due care for his own safety as a passenger in an automobile, or (2) under a joint enterprise, the negligence of the driver would be imputed to him. *Akins v. Hamblin*, 237 Kan. 742, 745, 703 P.2d 771 (1985). The court did not understand the BCCC defendants' position to be that Johnson's negligence should be imputed to Foster under a joint enterprise theory. The BCCC defendants alleged at trial that Foster was independently negligent for riding in a car that had its lights off.

The defendants did not dispute that it was their burden to show that either of the plaintiffs were negligent. As for plaintiff Clark, defendants presented testimony of an expert accident reconstructionist who opined that Clark had been speeding. On the issue of plaintiff Foster's negligence, defendants seek to rely on Clark's testimony that he (Clark) did not see any lights. Defendants seek to use this testimony as evidence that the Johnson vehicle indeed did not have its lights on. From this, defendants conclude that Foster was negligent for allowing himself to be driven in a car that had its lights off and, apparently, for his alleged failure to warn Johnson to turn his lights on. At most, Clark's testimony that he saw no lights is evidence that Clark may have been inattentive. The jury did find him 10% at fault. There was no evidence that Johnson was driving with his lights off and, therefore, no question of fault on the part of Foster to submit to the jury.

### F. Remittitur

■ Federal law governs the decision whether a remittitur should be granted in this diversity case. "Under federal law, whether the trial court properly refused to grant remittitur or a new trial on the ground of an excessive damage award is tested by an abuse of discretion standard." *Royal College Shop v. Northern Insurance Co. of New York*, 895 F.2d 670, 677 (10th Cir.1990); *K–B Trucking Co. v. Riss International Corp.*, 763 F.2d 1148, 1162 (10th Cir.1985). Where the only error is in the excessiveness of an award that itself is not the result of passion or prejudice, the court may order a remittitur. *Malandris v. Merrill Lynch, Pierce, Fenner & Smith*, 703 F.2d 1152, 1168 (10th Cir.1981) (en banc) (plurality opinion), *cert. denied*, 464 U.S. 824, 104 S.Ct. 92, 78 L.Ed.2d 99 (1983); *K–B Trucking Co. v. Riss International Corp.*, 763 F.2d at 1162. The decision of whether to grant a remittitur rests within the broad discretion of the trial court. *Garrick v. City and County of Denver*, 652 F.2d 969, 971 (10th Cir.1981), *cert. denied*, 464 U.S. 824, 104 S.Ct. 92, 78 L.Ed.2d 99 (1983); *Malandris*, 703 F.2d at 1184 n. 1 (Seymour, J., concurring and dissenting).

---

**2.** Defendants use the word "allegedly" in their motion for new trial, Doc. 153, p. 2.

Having reviewed the evidence presented at trial, the court finds that the amount of the award to plaintiff Clark was not excessive. The amount was supported by the evidence. The court shall not grant a remittitur.

IT IS BY THE COURT THEREFORE ORDERED that defendant Pringle's motion for a new trial (Doc. 152) is hereby denied as to plaintiff Clark and is moot as to plaintiff Foster.

IT IS FURTHER ORDERED that defendants Board of Trustees of Butler County Community College, Butler County Community College, and Randy Smithson's motion for a new trial (Doc. 153) is hereby denied as to plaintiff Clark and is moot as to plaintiff Foster.