944 F.2d 911
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 M. Duane HORTON, individually and as Trustee for the
employees of SII Megadiamond, Inc., Nathan Horton, Wendy
Horton McBride, David R. Hall, as custodian for Barbara
Hall, Emily Hall, Mark David Hall, Michael Allen Hall,
Stephen Randall Hall, David R. Hall, Trustee for DHD, Inc.,
Richard C. Stratford, Marilyn Stratford, Stratford
Investments, Stratford Enterprises, Vera C. Stratford,
Richard C. Stratford Trust, Barry Dewayne Wood, Catherine H.
Thompson, Charlotte Hall Weight, individually and as
custodian for Hannah Weight, Hyrum Robert Weight, Sara
Weight, Daniel Ray Bartholomew, Albert Jolis, Bernard Jolis,
Douglas Allen Mecham, Sherlene Hall Bartholomew,
individually and as custodian for Daniel Hall Bartholomew
and Laura Bartholomew, R.L. Coats, J. Earl Garrett, H. Tracy
Hall, individually and as custodian for Anthony Rondot Hall,
Elizabeth Hall, Huntington Tracy Hall, Mary Hall, Richard
Alexander Hall, Robert Langford Hall, Spencer William Roy
Hall, Suzanna Hall and Zina Hall, Ida Rose Hall, Karen
Vandyke Hall, Nancy Hall Mecham, individually and as
custodian for Carli Anne Mecham and Chelsey Kae Mecham,
Elizabeth Hall Neil, individually and as custodian for Emily
Hall, Ernie Tracie Neil, Gregory Scott Neil and John Patrick
Neil, John Martin Neil, Douglas N. Thompson, Bryan Young
Weight, Virginia Hall Wood, individually and as custodian
for Johnathan Wesley Wood, Nathan Spencer Wood, Sara
Elizabeth Wood, Warren Tracy Wood, Elizabeth Huntington
Hall, Plaintiffs-Appellees,
v.
SMITH INTERNATIONAL, INC., Defendant-Appellant.
 No. 90-4168.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 10, 1991.
 
 Before SEYMOUR and EBEL, Circuit Judges, and BABCOCK,* District Judge.
 ORDER AND JUDGMENT**
 EBEL, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Defendant appeals from an adverse judgment entered by the United States District Court for the District of Utah following a bench trial. Plaintiffs brought this action in diversity for compensatory damages and declaratory relief relating to defendant's performance of its obligations under a corporate merger agreement.
 
 
 3
 The parties' dispute has narrowed on appeal to a single issue--whether the district court correctly determined that royalty payments due plaintiffs under section 3.2(ii)(f) of the agreement,[1] referred to as the sixth of six contingent "milestone" provisions included in section 3.2(ii), were not subject to a direct offset by payments received by plaintiffs pursuant to the fifth milestone, i.e., section 3.2(ii)(e). Specifically, defendant argues that the district court's construction of the latter section is erroneous because (1) all of the first five milestones set out in sections 3.2(ii)(a)-(e) are related to the sixth in this regard by the same language,[2] (2) plaintiffs submitted insufficient evidence to distinguish section 3.2(ii)(e) from its four counterparts on the matter of setoff, and (3) prior to trial, plaintiffs stipulated that "[t]he maximum amount payable to Plaintiffs under the Progress Payment Milestone [ i.e., section 3.2(ii)(f) ] is limited by amounts paid or payable under Sections 3.2(ii)(a)-(d)." Final pretrial order filed May 29, 1990, at 10, para. F; see also id. at 5, para. B6. Thus, defendant contends that in light of plaintiffs' failure to distinguish section 3.2(ii)(e) from sections 3.2(ii)(a)-(d) on the critical issue of setoff, their pretrial stipulation on the issue with regard to the latter sections was equally binding with regard to the former, and the district court therefore erred in approaching the case as if with a fresh slate, hearing and relying on evidence of the parties' intent contrary to the stipulation.
 
 
 4
 Virtually all of the trial witnesses conceded, the district court concluded, and the parties do not dispute on appeal that section 3.2(ii)(f) is ambiguous. We agree. Consequently, the district court properly heard extrinsic evidence to determine the parties' intent regarding the relationship between sections 3.2(ii)(e) and (f). The matter is, therefore, one of fact, May v. Interstate Moving & Storage Co., 739 F.2d 521, 523 (10th Cir.1984), and our review is limited to the clearly erroneous standard, Nunn v. Chemical Waste Management, Inc., 856 F.2d 1464, 1467 (10th Cir.1988). Accordingly, the district court's interpretation of the evidence must stand absent a definite and firm conviction that a mistake has been committed. Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985). If its determination is plausible in light of the record viewed as a whole, we may not reverse even though we might have weighed the evidence differently. Id. at 574.
 
 
 5
 Plaintiffs presented the only testimony by a participant in the contract negotiations from inception to conclusion of the agreement. Duane Horton testified that the parties' original intent on the matter of setoff was to structure a direct mutual limitation operative only between the "technological" and "external sales" milestones (which ultimately became sections 3.2(ii)(a)-(d)) on the one hand, and the royalty or "progress payment" milestone (ultimately section 3.2(ii)(f)) on the other. R.Vol. II at 80-100. The additional, "upside performance" or "major success" provision (ultimately section 3.2(ii)(e)) suggested by Horton and agreed to by defendant was conceived independently of these considerations as a means to offer plaintiffs a further share in subsequent revenue should the venture's success exceed expectations. Id. at 100-05, 125-26. The structure and language of the resulting letter of intent drafted by the negotiating parties corroborates Horton's testimony, as does the fact, also noted by Horton, that the upper limit specified in section 3.2(ii)(f) equals the sum of the figures in sections 3.2(ii)(a)-(d).
 
 
 6
 Horton indicated that he never deviated from this original intent or engaged in discussions to renegotiate the basic structure of the setoff. See id. at 106-07, 123-28, 145; R.Vol. III at 49-50. When the upside performance provision became the "fifth milestone" in a preliminary draft of the final agreement, he considered it a mere convenience of expression. (Since the setoff provision later included in section 3.2(ii)(f) had not yet been written, the change had no significance in that regard at the time.) R.Vol. III at 10-14, 50. When section 3.2(ii)(f) was finally prepared, Horton viewed it as relating solely to the timing, not the total amount, of milestone payments,[3] serving to assuage a cash flow concern that had recently been raised in discussions by defendant, id. at 120-24; see also R.Vol. II at 37-39, 50, so the indiscriminatory reference to sections 3.2(ii)(a)-(e) therein did not signal to him any change in position on the issue of setoff, R.Vol. III at 124-25.
 
 
 7
 Horton's testimony is significant in several respects. It is substantiated to some extent by external evidence and, insofar as it provides a continuous trace of contractual intent from inception to completion of the agreement, it stands unopposed by like evidence from any other participant in the transaction. Indeed, two of defendant's employees testified that defendant's current interpretation of section 3.2(ii)(f) in regard to setoff actually originated with counsel in connection with this lawsuit. See R.Vol. IV at 213-15, 237. Finally, Horton's testimony does not contradict the pretrial stipulation, since he conceded that the parties had always intended a mutual setoff between sections 3.2(ii)(a)-(d) and section 3.2(ii)(f).
 
 
 8
 Plaintiffs also presented the testimony of Larry Holman, the attorney who assisted Horton during the negotiations and drafting that followed execution of the letter of intent. Holman corroborated Horton's view that the reference in section 3.2(ii)(f) to sections 3.2(ii)(a)-(e) was only a timing limitation intended to alleviate cash flow problems for defendant and, accordingly, he also agreed that any upside performance payment received by plaintiffs pursuant to section 3.2(ii)(e) was not to be set off against the remaining royalty payments still available under section 3.2(ii)(f). See R.Vol. III at 127-33, 157-63. However, lacking Horton's firsthand experience regarding the parties' original, if linguistically obscured, intentions, Holman further found no basis for deducting from section 3.2(ii)(f) royalties even those payments made under sections 3.2(ii)(a)-(d). See id. Defendant maintains that, to this extent, Holman's testimony, unlike Horton's, contradicts the parties' pretrial stipulation and should not have been considered. We note, though, that while defendant did at one point refer to the stipulation in its cross-examination of Holman, see R.Vol. IV at 276-77, defendant never once expressly objected to the solicitation or reception of Holman's testimony contrary thereto. Accordingly, we do not think the district court abused its discretion in considering such testimony for whatever light it might throw on the limited issue of the parties' contractual intent regarding the relationship of sections 3.2(ii)(e) and (f).[4] Cf. Monod v. Futura, Inc., 415 F.2d 1170, 1173-74 (10th Cir.1969) (pretrial order may be amended within trial court's discretion to conform to evidence if issue tried without objection). See generally R.L. Clark Drilling Contractors, Inc. v. Schramm, Inc., 835 F.2d 1306, 1308 (10th Cir.1987) (abuse of discretion standard applicable to district court's decisions regarding modification of pretrial order).
 
 
 9
 On the basis of the evidence and legal principles discussed above, we conclude that the district court did not err in determining that the parties' intent, ambiguously expressed in their final agreement, was to permit plaintiffs to earn the upside performance benefit of section 3.2(ii)(e) and the royalty payments of section 3.2(ii)(f) independently, without any direct reciprocal restriction beyond that regarding the timing of payment.
 
 
 10
 The judgment of the United States District Court for the District of Utah is AFFIRMED.
 
 
 
 *
 Honorable Lewis T. Babcock, District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 We shall follow the manner of the district court and the parties in letting references to the pertinent sections of the corporate merger agreement stand in as well for the corresponding, functionally derivative provisions of the ancillary employee trust agreement executed between defendant and the employees affected by the merger, represented by plaintiff Duane Horton
 
 
 [2]
 The language in question, found in section 3.2(ii)(f), reads as follows: "any amounts payable under this Section 3.2(ii)(f) for any calendar year shall not exceed an amount equal to the aggregate of amounts paid or payable under this Section 3.2(ii)(f) less the aggregate of amounts paid or payable under Sections 3.2(ii)(a)-(e)." (Emphasis added.)
 
 
 [3]
 The district court's memorandum opinion contains a thorough discussion of this issue, which was resolved in favor of plaintiffs and has not been challenged on appeal
 
 
 [4]
 Because defendant has not challenged the district court's determination that payments under sections 3.2(ii)(a)-(d) are, like the payment under section 3.2(ii)(e), not set off against section 3.2(ii)(f), we express no opinion on the much broader issue of whether that substantive determination could itself stand in light of the pretrial order and defendant's references to the stipulation regarding section 3.2(ii)(f) during trial. We recognize, as evidently do the parties, that given (1) the total limitation of $7.4 million placed on sections 3.2(ii)(a)-(f) by section 3.2(ii)(i), (2) the expiration of the time allotted for accrual of all milestone benefits, and (3) the fact that $3.7 million was earned under sections 3.2(ii)(a) ($1.85 million) and (e) ($1.85 million), the district court's ruling for plaintiffs on the setoff effect of section 3.2(ii)(e) essentially mooted the issue as to sections 3.2(ii)(a)-(d). That is, so long as the district court correctly held that section 3.2(ii)(e) does not reduce the amount available under section 3.2(ii)(f), its failure to deduct the $1.85 earned under section 3.2(ii)(a) therefrom, even if error, is of no consequence, since $7.4 million minus $3.7 million equals $5.55 million less that $1.85 million in any event