Jeannie Marie TOPLIFF,
et al., Plaintiffs,

v.

Bruce Allen GROSS, D.O., Defendant.

Civil Action No. 94–1415–MLB.

United States District Court,
D. Kansas.

Jan. 14, 1998.

**1248**

Caleb Boone, Hays, KS, for plaintiffs.

J. Stan Sexton, Hampton, Royce; Engleman & Nelson, Salina, KS, for defendant.

### MEMORANDUM AND ORDER

BELOT, District Judge.

Before the court are the following:

1. Plaintiffs' motion for new trial (Docs. 188 and 189); and

2. Defendant's response in opposition (Doc. 190).

This is a medical malpractice case. The trial began on December 1, 1997. Plaintiffs called ten witnesses; defendant called seven. The jury began its deliberations at approximately noon on December 10 and returned its verdict for defendant at approximately noon on December 11, 1997. Plaintiffs now contend that they are entitled to a new trial based upon comments made by the court. For the following reasons, plaintiffs' motion is denied.

The general rules pertaining to motions for new trial were summarized by this court in *Meyerhoff v. Michelin Tire Corp.*, 852 F.Supp. 933, 937 (1994), *aff'd*, 70 F.3d 1175 (10th Cir.1995):

> The decision whether to grant a motion for a new trial is committed to the sound discretion of the trial court. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984); *Royal College Shop, Inc. v. Northern Ins. Co.*, 895 F.2d 670, 677 (10th Cir. 1990). "Such a motion may be granted when the court believes the verdict to be against the weight of the evidence, when prejudicial error has entered the record, or when substantial justice has not been done." *Foster v. Bd. of Trustees of Butler Cty. Com. Col.*, 771 F.Supp. 1122, 1125 (D.Kan.1991) (citing *McHargue v. Stokes Div. of Pennwalt Corp.*, 912 F.2d 394, 396 (10th Cir.1990); *Anderson v. Phillips Petroleum Co.*, 861 F.2d 631, 637 (10th Cir. 1988); *Holmes v. Wack*, 464 F.2d 86, 88–89 (10th Cir.1972)). The moving party "must demonstrate trial errors which constitute prejudicial error or that the verdict is not based on substantial evidence." *White v. Conoco, Inc.*, 710 F.2d 1442, 1443 (10th Cir.1983). "[N]o error in any ruling or order or in anything done or omitted by the trial court or by the parties is ground for granting a new trial ... unless the error or defect affects the substantial rights of the parties." *Rasmussen Drilling, Inc. v. Kerr–McGee Nuclear Corp.*, 571 F.2d 1144, 1149 (10th Cir.), *cert. de-*

*nied,* 439 U.S. 862, 99 S.Ct. 183, 58 L.Ed.2d 171 (1978) (citing Fed.R.Civ.P. 61).

The first comment of the court complained of by plaintiffs came during defense counsel's cross examination of Dr. A. David Barnes, one of plaintiffs' experts. When the comment was made, Dr. Barnes had testified for several hours on direct and cross.

Q. Look at Defendant's Exhibit 50 at Page 3, right-hand column, the paragraph commencing with the term, "Reduced activity or bed rest in the late second trimester is commonly recommended to prevent preterm births. This therapy is often prescribed for women with multiple gestations, although randomized studies do not demonstrate that it results in the prolongation of gestation"; isn't that true?

A. I believe that will probably be changed in the future.

Q. Doctor, isn't it true—

THE COURT: Maybe we'll be able to fly to Saturn in the future, but that's not the point.

A. It does say that.

Q. This is authoritative, isn't it?

A. Well, contrary to all of the documentation, yes, yes.

Plaintiffs' counsel did not object to the court's comment. Later, however, after the court had advised plaintiffs' counsel during a conference in chambers that Dr. Barnes' demeanor during cross examination was hurting plaintiffs' case, plaintiffs' counsel moved for a mistrial based on the court's comment. The court denied the motion.

Despite the repetitive nature of plaintiffs' counsel's questioning, Dr. Barnes' direct examination demeanor was generally helpful and neutral. His demeanor changed dramatically on cross examination. He would not give direct answers to straightforward questions. His answers were often nonrespon-

sive—the above snippet of his testimony is but one example. His manner became aggressively and blatantly pro-plaintiff. On more than one occasion prior to the testimony set out, *supra,* the court had to admonish Dr. Barnes to answer defense counsel's questions in a responsive manner, not to volunteer and that his job as an expert witness was to help the jury understand the issues, not to be an advocate for the plaintiffs' side of the case.

The court's observation of the manner in which Dr. Barnes was testifying brought to mind a similar situation when Judge Marten of this court was compelled to declare a mistrial when plaintiffs' counsel, Mr. Boone, and one of his witnesses, Caroline Avery–Dahl, repeatedly violated Judge Marten's in limine orders and warnings not to get into certain areas of testimony.[1] It appeared to the court that Dr. Barnes, whether on his own hook or otherwise, was determined to do the same thing in this case, i.e., put across his story, without regard to well-accepted rules of cross examination and admonitions of the court. It is worth noting that Dr. Barnes is not the professorial type witness who finds himself yanked from the halls of academia and thrust into the unfamiliar adversarial process where he is unwillingly required to defend some obscure theory. Rather, plaintiffs' counsel recruited Dr. Barnes, at the last minute, from an expert witness referral company.[2] In other words, Dr. Barnes is an expert-for-hire. The court's comment, more than anything else, was simply a reaction to Dr. Barnes' continuing refusal to heed the court's earlier admonitions.

Plaintiffs contend that the court's comment, made during Dr. Barnes' day long testimony, destroyed his credibility and caused the jury to render a defendant's verdict. Plaintiffs' counsel claims that some of the jurors laughed at the court's comment. This may, or may not, be so—the court was not looking at the jury at that moment. The

---

1. *Gossling v. Hays Medical Center,* No. 92–1488–JTM

2. According to Court Exhibit, Dr. Barnes' letter of March 31, 1995, Dr. Barnes was contacted by plaintiffs' counsel only three days before the deadline for disclosure of expert witnesses. In

Kansas, expert testimony is generally required on medical standard of care issues. PIK 3d 123.10. It would appear, then, that when counsel filed this case, he did not have an expert's opinion that defendant deviated from the standard of care.

court does not recall hearing any laughter, however. As defendant notes in his response (Doc. 190 at 6), the jury had many reasons for disregarding not merely Dr. Barnes' testimony, but plaintiffs' overall case.

Plaintiffs also claim that the court made other comments "to and about plaintiffs' counsel in front of the jury showing the court's extreme displeasure or dislike for plaintiffs' counsel or for plaintiffs' case ..." (Doc. 188 at 5). Plaintiffs cite the court's statement that witnesses being cross examined by plaintiffs' counsel were not required to answer questions "yes" or "no" and an instance where the court admonished plaintiffs' counsel to stop interrupting the proceedings with meritless objections.

■ In his cross examination of defendant's experts, plaintiffs' counsel attempted to utilize the method of requiring "yes" or "no" answers. The court has seen this method used, with some success, by experienced counsel. In this case, however, plaintiffs' counsel's methodology was ineffective, confusing, and time wasting. Fed.R.Evid. 403. As the court pointed out to plaintiffs' counsel at some point, he would ask a witness a question and then, before the witness could draw a breath to answer, either would re-ask the question or, more often, ask a different question. Counsel immediately would demand "answer the question yes or no, doctor," or words to that effect. In many cases the witness, obviously uncertain as to the nature of the question (or questions), could not answer "yes" or "no" and would attempt to explain his or her inability to do so. Undeterred and seemingly unaware of the state of confusion created by questions, plaintiffs' counsel continued to demand a "yes" or "no" answer. It became apparent to the court after several of these episodes that plaintiffs' counsel's method of questioning, and not any intent on the part of the witness to be evasive, was causing the problem. In an effort to move things along and avoid confusion, the court merely advised witnesses having legitimate problems with counsel's "yes" or "no" technique that they could tell plaintiffs' counsel that the question could not be answered "yes" or "no" or that they did not have to give a "yes" or "no" answer. The court's purpose was not to embarrass plaintiffs' counsel or make him look inexperienced—he accomplished that on his own throughout the trial—but rather to manage the testimony in a way that would be meaningful and succinct for the jury.

■ The other instance occurred during cross examination of one of plaintiffs' witnesses when counsel made repeated objections, none of which had merit, obviously intended to disrupt the flow of defense counsel's cross examination. The court simply instructed plaintiffs' counsel to stop.

Plaintiffs contend that the court's actions were motivated by dislike for their counsel. The court does not dislike plaintiffs' counsel; he does, however, dislike the way plaintiffs' counsel handled this case and several previous cases before this court. As Magistrate Judge Reid pointed out in his order of February 28, 1996 in *Paulie v. Cooperative Union Mercantile Co. of Grinnell, Ks.*, 1996 WL 162289, No. 95–1342 (D.Kan.1996), filed in this case at docket number 98: "the court is extremely concerned with the conduct of plaintiff's counsel, in that he is almost never able to meet deadlines set by the court in the numerous cases he has before this court." Judge Reid went on to detail plaintiffs' counsel's "long history of failure to meet deadlines imposed by the court." In his order of April 22, 1996 in this case (Doc. 117), Judge Reid imposed sanctions, noting that "Mr. Boone has been sanctioned repeatedly in the past and has been repeatedly admonished for his inability to handle matters in a timely fashion. The court finds it completely inexcusable for plaintiffs' counsel to take 6½ months to respond to discovery requests. Plaintiffs' counsel never offered any excuse for the delay."

Notwithstanding Judge Reid's order imposing sanctions, plaintiffs' counsel *still* failed to comply. Judge Reid then issued his order of May 31, 1996 (Doc. 118) ordering plaintiffs' counsel to appear in person and show cause why this case should not be dismissed, or counsel held in contempt and/or referred to the court's disciplinary committee for his continued failure to obey the orders of the court. A copy of this order is attached hereto. The matter was not resolved until plaintiffs' counsel's father appeared at the contempt hearing (Docs. 119, 121, 122 and 123).

The problems caused by plaintiffs' counsel have not been confined to discovery matters handled by the magistrate judges. As noted in its order on motions in limine in this case (Doc. 174), plaintiffs' counsel did not file motions in limine in a timely fashion and the motions were devoid of any citation to authority. Concerned about a repeat performance of counsel's failure to comply with in limine orders in the Gossling case, the court required plaintiffs' counsel to file written proffers of evidence to which defendant's in limine motions were directed. Plaintiffs' counsel failed to comply.

At the trial, substantial portions of plaintiffs' experts' testimony was received by videotape depositions. Plaintiffs' counsel's questioning during the depositions, unrestricted by judicial supervision, was long, agonizingly repetitious and, in some cases, self destructive. Had plaintiffs' counsel looked at the jury, he would have seen in their faces the effect of his repetitious, time-wasting and ineffective questioning of witnesses, both live and by deposition.

Notwithstanding pretrial and trial admonitions regarding the proper scope of rebuttal, it was necessary for the court to hold *in camera* proceedings for the purpose of determining the nature and extent of plaintiffs' intended rebuttal evidence. The court did so because it could not proceed with confidence that counsel would limit rebuttal to proper areas. Even when given the *in camera* opportunity to do so, plaintiffs' counsel either could not, or would not, advise the court regarding the areas of testimony to be presented by his proposed rebuttal witness, Dr. Barnes. A reasonable inference from this failure is that counsel either was unprepared for rebuttal or intended to put on improper rebuttal testimony.

Counsel accurately characterized the *in camera* proceedings as extraordinary. But everything about Mr. Boone's cases is extraordinary. From the beginning of every case until its termination, whether by trial, summary judgment or dismissal, extraordinary effort is required by the court, court personnel and opposing counsel. At least twice the time and effort is required to handle one of Mr. Boone's cases than for a comparable case brought by any other lawyer. The black-and-white record simply cannot adequately convey what it is like to manage and preside over a case brought by Mr. Boone.

The court has read the three cases relied upon by plaintiffs: *United States v. Sowards,* 339 F.2d 401 (10th Cir.1964); *Santa Maria v. Metro–North Commuter Railroad,* 81 F.3d 265 (2nd Cir.1996) and *Rivas v. Brattesani,* 94 F.3d 802 (2nd Cir.1996). The court's comments and admonitions in this case cannot be equated with the conduct condemned in these cases. This court did not question witnesses; did not comment on the credibility of witnesses or the weight of the evidence; did not berate plaintiffs' counsel before the jury; did not threaten counsel with contempt or hold counsel in contempt. Rather, the court was attempting to confine a professional witness' testimony to its proper parameters and direct the flow of testimony so that it would be meaningful to the jurors. These actions were within the court's authority and responsibility. *Vasey v. Martin Marietta Corp.,* 29 F.3d 1460, 1469 (10th Cir.1994) (trial judges are afforded considerable discretion in the conduct of the trial) and *Acree v. Minolta Corp.,* 748 F.2d 1382, 1388 (10th Cir.1984) (trial judge has a duty to assist in getting all material facts before the jury in a truthful and orderly manner).

Returning to the standards for a new trial, the court is satisfied that plaintiffs have not demonstrated that the court's remarks deleteriously affected their substantial rights, much less caused the jury to return a defendant's verdict. Plaintiffs' claims were presented to intelligent jurors who, from the court's observation, listened as attentively as can be humanly expected of persons subjected to Mr. Boone's method of trying a case. If the jury found plaintiffs' case to be wanting, it was because defendant's case was strong and well presented. The jury deliberated for several hours over two days before returning its verdict. Among other things, the jury was instructed at the beginning and at the end of the case (Doc. 184 at Instr. 20) that it should disregard any remarks made by the court, an instruction which was presumptively followed. *United States v. Hatatley,* 130 F.3d 1399, (10th Cir.1997); *United States v. Iribe–Perez,* 129 F.3d 1167, 1171

(10th Cir.1997); *Mason v. Okla. Turnpike Authority,* 115 F.3d 1442, 1456 (10th Cir. 1997) and *Breeden v. A.B.F. Freight System, Inc.,* 115 F.3d 749, 754 (10th Cir.1997). There is absolutely no basis to believe, or even suspect, that the jury disregarded this instruction and returned its verdict on the basis of the court's comment and admonitions.

Plaintiffs' motion for a new trial (Docs. 188 and 189) is overruled.

IT IS SO ORDERED.